Benjamin D. Ritholz et al., Trading as Dr. Ritholz Optical Company, Appellants, v. Thomas Andert et al., Appellees.

Gen. No. 40,396.

Opinion filed December 27, 1939.   Rehearing denied January 10, 1940.

CLARENCE T. MORSE, BENJAMIN D. RITHOLZ, and DONALD A. RITHOLZ, all of Chicago, for appellants.

JOSEPH M. JACOBS and WILLIAM VIHON, both of Chicago, for appellees; JOSEPH M. JACOBS, WILLIAM VIHON and H. U. BERNSTEIN, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiffs appeal from a decree dissolving a temporary injunction and dismissing plaintiffs' complaint, supplemented and amended, for want of equity.

The second amended complaint alleges, in substance, that plaintiffs are manufacturing and selling optical goods in Chicago and throughout the United States and Canada; that they purchase raw materials and unfinished goods and manufacture and produce finished optical goods to sell to the public; that they have built up a large and profitable business and valuable goodwill; that defendants are members of the Optical Workers Union, Local 18527, affiliated with the American Federation of Labor, and that a contract of employment existing between plaintiffs and said Local expired on August 1, 1937; that on August 10, 1937, plaintiffs decided that it would be more economical to close their factory and to have goods manufactured

by other manufacturers, and they then advertised their factory for sale; that they were about to consummate a sale of the factory, with all the fixtures, etc., to a firm in Kansas City; that there was never any question of bargaining, dealing, or negotiating collectively with any or all of the defendants and there was no lockout; that about August 21, 1937, defendants began to picket all of plaintiffs' retail stores, the pickets bearing placards reading, "Ritholz Optical Co., Unfair to Labor, CIO"; that plaintiffs had no contract of employment with the CIO and none of their employees was connected with that organization; that about August 11, 1937, plaintiffs caused their workshop and factory to be closed, and that thereupon defendants, all of whom were former employees of plaintiffs, save Thomas Andert, conspired with Andert to put plaintiffs out of business. The complaint then alleges that defendants are threatening plaintiffs' employees and seeking to prevent employees of plaintiffs from entering the place of business of plaintiffs; that plaintiffs can operate their business profitably and have their finished optical goods made by other manufacturers if they are not interfered with by defendants. Plaintiffs ask for an injunction restraining defendants from picketing the places of business of plaintiffs throughout Chicago and Cook county, from threatening or intimidating any of plaintiffs' present employees to compel them to sever their relationship with plaintiffs, from entering upon plaintiffs' places of business for the purpose of interfering with or obstructing the business of plaintiffs, and from interfering with or coercing manufacturers or jobbers of optical goods with whom plaintiffs have contracts.

In their supplemental answer defendants deny the charges made against them in said complaint, and allege that the factory was not permanently closed by plaintiffs and that the stores are a part and parcel of plaintiffs' business; that sixty-five employees in

the prescription, frame and stock departments are on strike; that the stock room and shipping room remain open; that the picketing activities of defendants were carried on without force or coercion. Defendants filed a motion to dissolve the temporary injunction issued on August 27, 1937, upon the ground, *inter alia,* that the injunction was secured by plaintiffs on false and fraudulent misrepresentations.

Rules to show cause were entered against several of the defendants but no hearing was had upon any of them. On October 19, 1937, the parties agreed that the cause should be referred to Master in Chancery Cohen and it was thereupon ordered ''that the complaint, answer and motion to dissolve the temporary injunction heretofore entered herein, and all other matters be, and the same are hereby referred to Master in Chancery Benjamin E. Cohen, to hear the evidence presented upon all issues raised, and to render his report as soon as conveniently possible.'' The hearings before the master commenced October 22, 1937, and the proofs were closed February 9, 1938. The testimony introduced comprises approximately nine hundred pages of the record. The master filed an exhaustive report, in which he found that all defendants were employees of plaintiffs either in the prescription or frame department and were formerly members of the Optical Workers Union; that the principal issues involved in the cause were ''(a) At the time of the closing of the factory by plaintiffs on August 11, 1937, was there an actual labor dispute between the parties relative to terms and conditions of employment? (b) Was the alleged sale of plaintiffs' factory to Victor LaDue a bona fide sale? (c) Did the defendants exceed the scope of peaceful picketing by such methods as intimidation, coercion or threats thereof?''; that during August, 1936, a contract to last one year was entered into between the Optical Workers Union and plaintiffs, which fixed

terms and conditions of employment of plaintiffs' employees in the prescription department; that on May 17, 1937, that union entered into a contract with plaintiffs fixing terms and conditions of employment in the frame department of plaintiffs' factory for a period of one year; that during May or June, 1937, plaintiffs' employees severed their connection with the American Federation of Labor and practically all of them became members of a local union of the Committee of Industrial Organization; that on August 11, 1937, the prescription department contract had expired, and a committee of the said union met with Benjamin Ritholz, about two o'clock p. m. that day, and the latter offered the committee a certain increase in pay for all employees in said shop; that the committee informed Ritholz that they did not believe the employees would accept the terms and conditions offered; that on the same day about five p. m. plaintiffs caused a notice to be posted on the time clock in their factory advising all employees that plaintiffs were then suspending operation of their prescription and frame factories; that said factories were accordingly closed and no operations were conducted therein until some time later; that on August 13, 1937, plaintiffs caused to be inserted in the Chicago Daily Tribune a three-line advertisement that the frame and prescription factories of plaintiffs were for sale; that on September 2, 1937, plaintiffs executed a bill of sale purporting to sell to Victor LaDue all of the machinery, furniture and fixtures in the optical prescription shop; that on September 9, 1937, plaintiffs executed a bill of sale to LaDue purporting to sell the machinery, tools and wire used by plaintiffs in manufacturing operations in their frame department; that the first bill of sale recited a consideration of $15,000 in hand paid by the grantee, and the second recited a consideration of $10,000 in hand paid by the grantee. The master then finds that plaintiffs executed certain leases,

relating to the premises in question, to LaDue; and that LaDue executed a certain chattel mortgage to plaintiffs. The master analyses, at length, the evidence relating to the sales to LaDue, and finds "that the purported sale from plaintiffs to LaDue was not actual and bona fide but that the entire arrangement was a fraudulent scheme, sham and subterfuge designed to eliminate labor difficulties with the defendant union." After carefully considering the evidence. bearing upon the alleged sales to LaDue we find ourselves in accord with the master's finding. The proof shows overwhelmingly that LaDue was merely a tool of plaintiffs in the entire transaction. He was a former employee of plaintiffs, an optometrist in one of their stores. Plaintiffs have omitted from the abstract a great deal of the evidence that bears upon the character of LaDue and his connection with the pretended sale. It appears that in September, 1936, in the court of common pleas, in Cleveland, Ohio, a decree was entered finding that the Buhl Optical Company, of Cleveland, and LaDue were illegally practicing optometry and they were enjoined from carrying on the practice of optometry in that State; that there was a contract existing between LaDue and the Buhl Optical Company whereby LaDue was supposed to have purchased the entire business of the said company. The court, in its decree, found that this contract was a sham and a fraud, and enjoined LaDue and the Buhl Optical Company from carrying out the contract. LaDue's license to practice in Ohio was revoked on June 6, 1937, because of his dishonest conduct. In the instant case, Jack B. Dworken, attorney for the Ohio State Optometry Association and the Cleveland Optometry Association, testified that LaDue, on January 4, 1938, came to his office and stated to Dworken that the sale by plaintiffs in the instant case to LaDue was a sham and a fraud; that it was arranged by Ritholz to avoid the force and effect of some contract

that Ritholz had with a labor union; that he, LaDue, was practically penniless at the time of the pretended sale; that Ritholz had the papers drawn up, made the arrangements and deposited certain moneys "on behalf of LaDue that was not LaDue's money but Ritholz's money. This was done for the purpose of showing that the transaction was legal"; that while he signed the papers he did not know the contents of the same. From certain evidence in the instant case it appears that after the alleged sale LaDue did not carry on as the owner of the business and that plaintiffs retained the control and management of the same. Certain mountain peaks in the evidence lead to the conclusion that the alleged sale, made at the time in question, was designed to avoid the Anti-Injunction Act, in other words, that it was a subterfuge to remove from the case any question of a "labor dispute" between plaintiffs and their employees.

As to the alleged acts of violence, the master finds: "That at the time of the closing of plaintiffs' factory on August 11, 1937, and throughout the entire period of time thereafter, there was an actual labor dispute between plaintiffs, as employers, and the defendants, as employes, relative to the terms and conditions of employment in plaintiffs' factory. Therefore, the Master is of the opinion that defendants had at all times subsequent to August 11, 1937, and up to and including the present date, the right to peaceful picketing of plaintiffs' places of business in order to publicize the existence of the labor dispute between themselves and plaintiffs and in order to make known to the public in general the fact of the existence of the said labor dispute. This right should be accorded defendants even though the factory in question was actually sold to LaDue. If it be conceded that the factory is at the present time actually being operated by LaDue, he not being a party to these proceedings, plaintiffs could not complain about picketing of La-

Due's factory being engaged in by defendants. . . . Furthermore, there is no evidence in the record tending to prove that defendants have in any manner or form whatsoever exceeded the scope of legitimate peaceful picketing. There is no evidence in the record of coercion, of intimidation, or of threats of violence, but only evidence of peaceful legitimate picketing being conducted strictly in accordance with law." The record sustains these findings.

The master recommended that the temporary injunction be dissolved and that a decree be entered dismissing plaintiffs' complaint for want of equity.

The master's report came on for hearing before Judge NIEMEYER, an able, experienced, and careful judge. After giving the report due consideration he overruled the objections and exceptions filed by plaintiffs to it, approved and confirmed the report, and entered the decree that plaintiffs seek to have reversed.

Plaintiffs contend that defendants are barred from any relief in equity on the ground of unclean hands. The argument is that the Optical Workers Union, without consulting plaintiffs or in anywise notifying them, "ceased to exist as an American Federation of Labor union, and became an affiliate of the Committee of Industrial Organization." The fact that the Optical Workers Union changed its affiliation from one parent organization to another was not a matter that concerned plaintiffs. Plaintiffs argue that their rights were adversely affected by the change because the contracts they had with the Optical Workers Union when it was affiliated with the American Federation of Labor contained a provision requiring defendants to submit to arbitration any grievance which might arise. The evidence shows that one of the two contracts had lapsed and negotiations were being conducted for a new contract when plaintiffs, on August 11, notified the employees that they were suspending the operation of the plant; and that they

then shut the plant despite the fact that the committee representing the union was notified on said date by Ritholz to report to its membership and to bring back to him, on August 12, an acceptance of plaintiffs' proposal in reference to wages. Plaintiffs did not ask for arbitration with their employees but resorted to the lockout. Then followed the pretended sales to La-Due.

Plaintiffs contend that "the Anti-Injunction Statute of Illinois legalized picketing, only where there was a 'dispute concerning terms or conditions of employment' and only where the picketing was peaceful"; that the said statute "did not prohibit an injunction against picketing in the case at bar because there was no dispute here, since one of the parties (Plaintiff-Employer) had ceased to exist." It is sufficient to say in answer to this contention that it ignores the findings of the master as to the nature and purpose of the sales to LaDue.

Plaintiffs contend that the Anti-Injunction statute does not prohibit an injunction against picketing in the case at bar because the picketing was not peaceful. This contention also ignores the master's finding that the picketing was peaceful. Plaintiffs' contention that the picketing was not peaceful depends entirely upon the following, that occurred during the direct examination of Benjamin D. Ritholz: "Q. What happened after the 11th day of August, 1937, with reference to the acts committed by the defendants? Mr. Vihon [attorney for defendants]: I object. The Master: Sustained. Mr. Lurie [attorney for plaintiffs]: Q. Was there anything done by the defendants after the 11th day of August, 1937? Mr. Vihon: I am going to object to that. Mr. Lurie: Q. On Thursday, August 12th, did any of the defendants make any threats to the plaintiffs herein? Mr. Vihon: I object. The Master: Sustained." Plaintiffs' argument that the master committed "reversible error" when he re-

fused to permit the witness to answer the questions, is based upon the unwarranted assumption that if the witness had been allowed to answer the questions, the answers would have shown that defendants committed illegal acts. If plaintiffs really intended to present evidence to show that defendants made threats or committed acts of violence, the able counsel for plaintiffs would not have allowed the record to remain as it is. He made no explanation to the master as to the purpose of the questions. To preserve the instant contention for review it was necessary to make an offer as to what was expected to be proved by the witness and then obtain a ruling upon the offer. (See *Chicago City Ry. Co. v. Carroll,* 206 Ill. 318, 328, 329.) No such offer was made. If he had made the offer and the master ruled adversely, he would then have the right to apply to the chancellor for a ruling, and after the chancellor had ruled counsel could then proceed with the hearing before the master, at which time the master would be bound to follow the court's ruling. *A fortiori,* in the objections filed by plaintiffs to the master's report, no objection was made that the master erred in sustaining the objections to the questions put to Ritholz. We note that Benjamin D. Ritholz, the witness upon the stand, is a plaintiff in the cause and was the principal factor in plaintiffs' business. He is one of the attorneys for plaintiffs in this court. Plaintiffs suggest, rather than argue, that as defendants failed to introduce any evidence to disprove the verified allegations in the second amended bill as to threats, intimidation, etc., these allegations should be taken as proof that the picketing was not peaceful. It is a sufficient answer to the suggestion to say that the said allegations were denied in the verified answers filed by defendants. Plaintiffs made the charges of violence and intimidation, and the burden was upon them to prove the charges.

By leave of court plaintiffs have cited the following cases, decided since the filing of the briefs in this cause, namely: *Meadowmoor Dairies v. Milk Wagon Drivers' Union,* 371 Ill. 377; *Swing v. American Federation of Labor,* 372 Ill. 91; *Maywood Farms Co. v. Milk Wagon Drivers' Union,* 301 Ill. App. 607 (Abst.); *Hendrickson Motor Truck Co. v. International Ass'n of Machinists,* 301 Ill. App. 608 (Abst.). Plaintiffs contend that these cases sustain their position that the temporary injunction should be made permanent. The last three cases cited follow *Meadowmoor Dairies v. Milk Wagon Drivers' Union, supra.* The ruling in that case, in our opinion, does not apply to the facts in the case at bar. The *Meadowmoor* case holds that the Illinois Anti-Injunction Act of 1925 (Ill. Rev. Stat. 1937, ch. 48, par. 2a [Jones Ill. Stats. Ann. 106.21]) does not prohibit injunctions in all matters which affect employment, but it applies only in cases where employees have a dispute with their own employer or in a labor dispute between groups of employees and employers, and that the act cannot be applied to preclude an injunction against a secondary boycott by unlawful interference with the business of one not a party to a labor dispute, who does not employ the labor in question, but who is in lawful competition with employers of such labor, as the words "party to a labor dispute," in the statute, refer to employer and employee. In the *Meadowmoor* case the facts were (pp. 379, 380): "The members of the defendant union are employed upon a weekly basis by dairies competing with the Meadowmoor company and have certain definite hours of work and deliver the milk, as employees, to customers of their employers. They have certain routes, solicit business and are paid a premium above the fixed minimum of sales. The Meadowmoor company does not follow this system. It sells its milk direct to certain individuals designated in the record

as vendors, who own or rent delivery trucks, sell directly to stores and establish routes and sell from house to house and do their own collecting and retain the money so collected. The so-called vendors are not members of the union and do not follow the rules of the union with respect to hours of work or times of delivery, and their compensation depends upon how much milk they are able to sell to the customers they procure." It was upon the aforesaid facts that the court held that the Anti-Injunction Act did not apply to the case. The court states, however (p. 384): "A careful reading of the act [Anti-Injunction Act] discloses it was intended to apply in cases where employees have a dispute with their own employer relative to terms and conditions of employment, or where similar questions are involved in a labor dispute between several groups of employees and employers." In the instant case there was a labor dispute between employer and employees and the ruling in the *Meadowmoor* case does not apply. After holding, in the *Meadowmoor* case, that the Anti-Injunction Act did not apply to the relationship of the parties to that proceeding, the court, in support of its ruling that a permanent injunction should issue as prayed, cited acts of violence and intimidation that were committed by defendants as the result of an unlawful conspiracy to prevent the sale and delivery of milk from plaintiff's dairy, and to hinder storekeepers and other retailers of milk sold by plaintiff; to prevent them from continuing the business of selling milk of the plaintiff, and to cause the customers of the plaintiff's vendors to discontinue the purchase of plaintiff's milk, such acts constituting an illegal secondary boycott. In the instant case there was no evidence of intimidation, coercion or violence on the part of the employees or any of their agents. Furthermore, it here appears that plaintiffs, in an attempt to avoid the application

of the Anti-Injunction Act, conspired to pretend to sell their factory to LaDue, the purpose being to enable them to contend in their application for an injunction against defendants that no relationship of employer and employee existed between them and defendants. No such situation was present in the *Meadowmoor* case.

Defendants have heretofore filed a motion to dismiss the appeal and we reserved to the hearing our decision on this motion. The motion will be denied.

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

JOHN J. SULLIVAN, P. J., and FRIEND, J., concur.