Mae Fugett, Individually and as Administratrix of Estate of Leslie Fugett, Deceased, Appellee and Cross Appellant, v. Gerard Murray, Appellant.

Gen. No. 9,659.

February term, 1941. Heard in this court at the February term, 1941. Opinion filed August 14, 1941.

KRUSEMARK & KRUSEMARK, of Joliet, for appellant.

DONOVAN, BRAY & GRAY, of Joliet, for appellee and cross appellant.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Leslie Fugett was killed and his wife, Mae Fugett, injured when the motorcycle on which they were riding, on State Highway No. 45, collided with a horse which was loose on a highway, belonging to Gerard Murray, the defendant. Suit was brought against the defendant, Gerard Murray, by Mae Fugett as administratrix of the estate of Leslie Fugett under the Injuries Act, and by Mae Fugett, individually, for damages for personal injuries sustained by her.

In count one of the complaint the administratrix seeks damages for the death of her intestate and in

count two, Mae Fugett, individually, asks for damages for personal injuries to herself. The charges of negligence in the two counts are identical. A jury trial resulted in a verdict finding the defendant not guilty under count one, but guilty under count two and awarded Mae Fugett damages of $2,500. Motions for a new trial made by the defendant and by the administratrix were overruled. Judgment was entered that the administratrix take nothing by virtue of the trial. Judgment was entered for Mae Fugett for $2,500. The defendant has appealed from the judgment against him, and the administratrix prosecutes a cross-appeal from the judgment that she take nothing as a result of the trial.

Several charges of negligence in the complaint predicate the action on section one of the Animal Act (sec. 1, ch. 8, Smith-Hurd's Annotated Statutes [Jones Ill. Stats. Ann. 5.001]) which is as follows: "Hereafter, it shall be unlawful for any animal of the species of horse, ass, mule, cattle, sheep, goat, swine or geese, to run at large in the State of Illinois: Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large." The suit was tried on the theory that a duty rested on the defendant to show he used reasonable care to prevent the horse from being on the highway. The liability of the defendant for the horse being loose on the highway, depends upon the construction of the above section of the statute.

The proviso in the statute was added in 1931. As a consequence of the enactment of section one as it now stands, without the proviso, the law of the State of Illinois required the owner or keeper of stock, named

in the statute to keep them from running at large on the public highways. The owner or keeper was liable in a civil action for damages resulting from his stock being loose on the highway even though he did not know the stock was so at large. It was not necessary for the plaintiff in such an action to allege that the owner or keeper negligently and unlawfully permitted his stock to be at large on the public highway. (*Farrell v. Crawford,* 222 Ill. App. 499.) Every animal of the species named in the statute is running at large unlawfully if it is on the public highway unattended, unrestrained and uncontrolled. (*Farrell v. Crawford, supra; Bulpit v. Matthews,* 145 Ill. 345; *Morgan v. People,* 103 Ill. App. 257; *Donaghue v. Fraikin,* 200 Ill. App. 339.) It is our opinion that the proviso was passed by the legislature to relieve the owner of stock of the harshness of the law, as declared in the *Farrell* case. Under the proviso the owner or keeper of stock may show in a civil action against him for injury caused to a person or property resulting from his stock running at large on the highway, that without his knowledge the stock was so at large, and that he used reasonable care to restrain the stock from being at large.

In the case here the plaintiffs introduced evidence proving that the horse belonged to the defendant, that he had charge of it, and that it was at large on the highway; also, evidence tending to prove that the plaintiffs were in the exercise of reasonable care for their own safety, and that the horse running at large on the highway was the proximate cause of the accident. The plaintiffs then rested their case in chief.

The general rule is that where an accident occurs as a result of the violation of the statute making it unlawful for stock to run at large on the highway, there is a presumption of negligence on the part of the owner and keeper of the stock, which is sufficient to carry the case to the jury. (45 A. L. R. 507 and

cases there cited.) The defendant claims the benefit of the proviso. The proof to be established under the proviso was within the knowledge of the defendant and not the plaintiffs. The burden of evidence, after the plaintiffs rested their case in chief, was on the defendant.

On the evening of Saturday, June 17, 1939, Leslie Fugett and Mae Fugett, his wife, left Joliet for Kankakee riding on a motorcycle. Leslie Fugett was operating the motorcycle and Mae Fugett was riding on a seat directly behind her husband, and sitting very close to his back, sometimes with her hands in the pockets of the jacket her husband was wearing. After leaving Joliet they rode on State highway 44 which extends in a southwesterly direction until it joins highway 45. From the junction of the two highways, highway 45 ran south toward Kanakakee. There was a stop sign at the junction of the highways. Leslie Fugett stopped his motorcycle at the stop sign, then turned it to the right and drove the motorcycle south on highway 45, for approximately two miles. It was about 8:15 o'clock p.m., C.S.T. when the motorcycle collided with the horse of the defendant, which was running at large on highway 45.

It is contended by the appellant that the verdict awarding $2,500 to Mae Fugett, individually, is against the manifest weight of the evidence. The accident occurred near the corral on the defendant's farm, which is on the west side of the highway No. 45. The pasture on defendant's farm was north of the corral. The corral, pasture and field are connected by a series of lanes and gates, as described minutely by the various witnesses. The defendant and his witnesses testified that about seven p.m. on the evening of the accident, he together with his sons, placed the horse which was involved in the accident, in a pasture with three other horses; that the fences around his place were substantial and in a good state of repair, and that he had

no knowledge that the horse was out of his pasture on the road, until after the accident had occurred. In respect to the location of the pasture, fields and lanes etc., and the state of repair of the fences, the defendant was corroborated by other witnesses. He was also corroborated by other witnesses that he placed the horse in question, in the pasture with the other horses at the time he states.

In rebuttal, Robert Lee Fugett, a brother of the deceased, testified that shortly after the accident, he and a man by the name of Emerson who represented a Furnace Company, had a conference with the defendant on his farm; that they went to the home of the defendant for the purpose of getting information with reference to the accident; that during their talk the defendant told about the death of the horse, and he was asked how the horse got out onto the highway; that the defendant stated he did not know how the horse got out, unless while putting the horses through the corral into the pasture, that one of them went around the gate instead of through it. The defendant denied having such conversation with these men. Robert Lee Fugett further testified that, as he left the farm, he noticed the defendant's fence was down along highway 45 and north from the Peotone road; that in the fence there were broken wires; that some of the posts were good, and some were not good; that he returned to the place the next day, and took photographs of the fence, that on that day the fence had been repaired. The photographs were introduced in evidence for the purpose of tending to show that there had been repairs recently made on the fence. The defendant denied that there had been any repairs made on the fence. It is the contention of the plaintiff that the jury were warranted by the evidence in arriving at the conclusion that the horse was not placed in the pasture on the evening of June 17, as contended by the plaintiff. It was a question of fact for the jury to de-

termine whether the evidence introduced by the defendant was sufficient to overcome the prima facie case made by the plaintiffs, and their rebuttal evidence. The credibility of the witnesses and the weight to be given to their testimony were questions to be determined by the jury. There is no evidence in the record tending to prove that the horse escaped from the pasture which was inclosed by a good fence. If the jury believed that the horse was not placed in the pasture on the evening of June 17, we cannot say that such a belief was unwarranted through the facts and circumstances appearing in evidence. The gate between the corral and the 40 acres of oats may have been open between the time the horse was taken from the barn and the time of the accident. There was also evidence that gates lead from the corral into the grounds surrounding the house on the farm. These grounds apparently opened on the 40 acres of oats. There was no testimony of fence being between the house and the 40 acres of oats. The inferences to be drawn from the evidence was a matter for the jury, and we cannot say that the minds of reasonable men would agree that the inference could not be drawn from the evidence that the horse went into the 40 acres of oats and from there onto the highway. There is a conflict in the evidence whether the fence along the east side of the oats field was broken after the accident. It was the peculiar province of the jury to determine the preponderance and credibility of the evidence. When this court is asked to set aside a verdict, the prevailing party is entitled to all the favorable inferences legitimately arising from the evidence. (*Dick v. Zimmerman*, 105 Ill. App. 615; *Avey v. Medaris*, 272 Ill. App. 207.)

As part of their case in chief, the plaintiffs proved by the witness, Murphy, that the motorcycle of Leslie Fugett was equipped with a speedometer having two hands. One hand indicated the rate of speed accord-

ing to the movement of the motorcycle. The other hand, known as the stop hand, registered the maximum speed, at which point it remained stationary until it was released by a button, when it returned to the zero mark on the speedometer; that after the motorcycle was stopped, the stop hand would register the highest rate of speed of the motorcycle, at any time during the trip, after the stop hand had been returned to the zero mark.

Robert Lee Fugett, as a witness for plaintiffs testified that after the accident, he rode the motorcycle which was in the accident to Joliet, and that the speedometer was operating properly, and that the stop hand registered a rate of speed of 45 miles per hour when he took charge of the motorcycle that night. The plaintiff tried to prove by this witness that he was experienced in driving motorcycles equipped with speedometers as above described. The witness was asked if the rate of speed shown by a stop hand is affected when a motorcycle is thrown while being driven, and the wheels thus freed of friction. This question, upon objection of the defendant, was excluded. It is claimed by the plaintiff that the trial court erred in excluding the answer. The questions and answers of the witness on this point do not appear in the abstract of trial proceedings; neither does it appear in the record, nor what the answer to the question would have been. It does not appear in the case that the exclusion of the testimony was prejudicial error. (*Curtis v. Baugh,* 90 Ill. 184; 4 C. J. 74).

It is claimed by all parties to this suit that the court erred in giving and refusing instructions. All of the given instructions are not included in the abstract of record. Only part of the instructions given on behalf of the plaintiffs are in the abstract. None of the given instructions on behalf of the defendant appear in the abstract, but are simply referred to by number. In the case of *Govekar v. Kweder,* 296 Ill. App.

402, only one of the given instructions appeared in the abstract. In discussing the case, we use this language: "It has long been the established rule that errors assigned with reference to the giving or refusing of instructions, whether upon the part of the plaintiff or the defendant, will not be reviewed in a court of appeal, unless all the instructions are fully set out in the abstract." *Madison v. Wedron Silica Co.,* 352 Ill. 60; *People v. Heywood,* 321 Ill. 380. There is another reason why this court will not consider the argument of appellant that the court erred in giving instructions on behalf of the plaintiff. The instructions complained of are .referred to by number instead of setting out the objectionable instruction in the brief and argument. This is not in compliance with the rules of court. In the case of *Jones v. Keilbach,* 309 Ill. App. 233, we find this language: "Complaint is also made that there was error in the giving of some of the instructions for the appellee, and in modifying some of the instructions given for the appellant, but the instructions are not set out in the brief and argument, but merely referred to by designated numbers. The questions involved are therefore not properly before us for consideration."

It is contended by the defendant that the verdict awarding Mae Fugett $2,500 is excessive. She testified that she was confined to her bed in a hospital for a week, and was then brought home in an ambulance; that her body was scratched and black and blue, "and I was hurt all through here (indicating)"; that she had concussion and hemorrhage of the eyes; that she was shocked and could not keep her body still; that she remained in bed at home for a week when she attempted to resume household work, but was unable to do so; that she then lived with her brother until fall; that she started to work in January; that in July she received a license as a beauty operator and that for about two weeks she has been operating her own

shop; that she is very nervous and has pain in her right temple as a result of the shock received in the accident; that she was not able to state if the nervousness and pain interfered with her work, but that she lost eight pounds in weight the first week after she opened her shop; that her expenses for medical and hospital treatment totaled $114.

As we stated in the case of *Bolle v. Chicago & N. W. Ry. Co.*, 258 Ill. App. 545: "In this character of cases the damages are for the determination of the jury, and unless we are able to say that the verdict is so excessive as to indicate that the jury were moved by prejudice or passion, we would not be warranted in reversing the judgment on the ground that the verdict is excessive." We do not think in this case that the verdict is so excessive that it shows prejudice or passion on the part of the jury.

It is also contended by the defendant that the plaintiff, Mae Fugett, did not prove that she was in the exercise of due care for her own personal safety. The evidence shows that Mae Fugett was a passenger on the motorcycle at the time of the accident, and the negligence if any, of her husband, who was operating it, cannot be imputed to her. (*Hazel v. Hoopeston-Danville Motor Bus Co.*, 310 Ill. 38.) The general rule is that negligence and contributory negligence are questions of fact for the jury, and so long as the question remains whether either party has observed that degree of care and caution imposed upon him by law, and the determination of the question involves the weighing and consideration of evidence, the question must be submitted as a question of fact to the jury. (*Chicago, St. L. & P. R. Co. v. Hutchinson*, 120 Ill. 587.) To authorize this court to say that the plaintiff, Mae Fugett, was not in the exercise of due care for her own safety, we must be able to say, that all reasonable and unbiased men, acting within the limits prescribed by the rules of law, would agree that she

was not, at and for a reasonable time prior to the injuries sustained by her, in the exercise of due care and caution for her own safety, and that as a result thereof, she contributed to the injuries received by her. *Pollard v. Broadway Cent. Hotel Corp.*, 353 Ill. 312. In an examination of the case she is entitled to the benefit of all the facts that the evidence tends to prove, and all just inferences that can be drawn therefrom, and the evidence most favorable to her must be taken as true, in determining if she was guilty of contributory negligence as a matter of law. (*Pollard v. Broadway Cent. Hotel Corp., supra.*)

There is evidence in the record that at the place of the accident the road ditches were about six feet deep; that the shoulder of the highway was about eight feet wide, and that there were weeds about five feet high against the fence. The impact of the collision broke both front legs of the horse, and it was found in the southbound lane of the highway. Whether or not Mae Fugett exercised due care for her own safety, was a question of fact for the jury. For some unexplained reason the horse was at large on the highway, and it was a question of fact for the jury to determine if a reasonably prudent person, under the same or similar circumstances, would have seen or anticipated that the horse was loose on the highway, in time for Mae Fugett to take some action to avoid personal injury.

The contention of the parties involves the question of the speed of the motorcycle at the time of the accident. The evidence on this phase of the case is in conflict, and when that is true in an action ex delicto this court will not set aside the verdict, reverse the judgment and remand the case for a new trial, unless it clearly appears that the verdict is manifestly against the weight of the evidence, and only under circumstances where the interests of justice demand it. (*Corcoran v. City of Chicago*, 373 Ill. 567.) As before

stated, Mae Fugett testified the motorcycle was being driven at the time of the accident between 40 and 45 miles an hour. About 100 to 150 yards south of the junction of highways 44 and 45, the motorcycle passed the witness, Foster, who was driving his automobile south on highway 45. Approximately two miles south of the junction the motorcycle collided with the horse. Foster testified that he was traveling between 35 and 40 miles an hour, and that the motorcycle was moving at a rate of speed of 10 miles faster than he was. Foster also testified that the stop hand of the speedometer on the motorcycle indicated between 70 and 75 miles an hour; the witness, Charles Smith, testified that the stop hand registered a speed of between 60 and 70 miles an hour. As before stated, Robert Lee Fugett testified that the stop hand indicated a speed of 45 miles per hour. The witness, Murphy, testified that when a motorcycle is thrown down, it loses traction, and the wheel connected with the speedometer is then running free, and it "kicks up," the speed until the power is shut off by using the throttle. Under the circumstances appearing in evidence, we are of the opinion that the speed of the motorcycle at the time of the accident, was a question for the jury to solve.

It is contended by the administratrix that the court erred in excluding testimony that Leslie Fugett was a man of careful habits and prudence. It appears from the written argument on behalf of the administratrix that she was offered as a witness on her own behalf to testify as to habits of care and prudence of her deceased husband. An examination of the record discloses that while Mae Fugett was a witness in chief, she was offered as a witness to prove habits of care of of her intestate. The matter was argued before the court, in the absence of the jury. No further question on this phase of proof was asked of this witness, and no ruling obtained as to the admissibility of this

testimony. There was no ruling from the court upon which to predicate error. (*Chicago City Ry. Co. v. Carroll*, 206 Ill. 318; *Ritholz v. Andert*, 303 Ill. App. 61.)

Mae Fugett as administratrix of the estate of Leslie Fugett, deceased, assigned seven reasons on her cross-appeal wherein the court erred, and that the judgment should be reversed. In the brief only three of these assignments are argued, namely, the court erred in giving improper instructions on behalf of the defendant, and the court erred in refusing to permit the witnesses to testify, as to the careful habits of the deceased, and the court's refusal to let Robert Lee Fugett testify as to his knowledge of the operation of the motorcycle. Questions assigned as error, and not argued, are waived in this court. We have heretofore stated the reasons why the argued questions cannot be considered by us.

We find no reversible error in the case, and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*