(No. 4747-)

DENNIS HANCHETT BY CLIFFORD HANCHETT, HIS FATHER AND NEXT FRIEND, AND CLIFFORD HANCHETT, INDIVIDUALLY, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed April 11, 1958.*

CASSIDY, SLOAN AND CASSIDY, Attorneys for Claimants.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

This is an action brought by Clifford Hanchett, Father and next friend of Dennis Hanchett, for personal injuries sustained by Dennis, and by Clifford Hanchett, individually, for property damage to his 1949 four door Chevrolet. This claim, filed herein against respondent, grew out of an accident, which occurred on November 6, 1955, on R.R. No. 1, known as Garfield Hill, located outside of Bartonville, Illinois, in the vicinity of the Peoria State Hospital.

The record consists of the following:

1. Complaint.
2. Departmental Report.
3. Transcript of evidence.

4. Motion of claimants for an extension of time to July 5, 1957 in which to file abstract and brief, together with proof of service of a copy of the motion on the office of the Attorney General.
5. Order of the Chief Justice granting the motion of claimants for an extension of time to and including July 5, 1957 in which to file abstract and brief.
6. Abstract of evidence.
7. Brief and argument of claimants.
8. Statement, brief and argument of respondent.
9. Reply brief of claimants.
10. Commissioner's Report.

Respondent, by and through its agents and servants, is charged with:

A. Carelessly and negligently failing to provide an adequate enclosure on its property to restrain livestock (mules in this case) from straying along and across public lands and highways.

B. Negligently and carelessly permitting the fencing enclosing said animals to become in a state of disrepair, permitting the mules to escape.

C. Negligently and carelessly failing to provide adequate means to keep its said mules on its own property.

D. Negligently and carelessly permitting its mules to stray along and across said R.R. No. 1.

Shortly before midnight on the evening of November 5, 1955, Dennis Hanchett and a friend, William Warren Dempster, were driving Clifford Hanchett's automobile in a westerly direction on Garfield Avenue near the Peoria State Hospital, which was under the jurisdiction and control of respondent. Just before the accident, Dennis Hanchettt was driving said automobile up Garfield Hill. James B. Gale at about said time was driving his automobile in an easterly direction across Garfield Road. As he came within 150 to 300 feet west of where the accident occurred, he saw three mules, which later

were identified as belonging to respondent. The mules were walking in an easterly direction along Garfield Road in the westbound lane. Mr. Gale, seeing the Hanchett car approaching and coming around the corner, blinked his lights trying to warn Hanchett of the presence of the mules on the highway. It appears that at that time the Hanchett automobile was being driven not to exceed 25 miles per hour in a 35 mile per hour zone. There appears not to have been any overhead illumination, and the only lights in the immediate vicinity were the lights from the Gale automobile. It further appears that Hanchett did not see the mules until he was five feet from them, and that he struck the mules while in the westbound lane of traffic on Garfield Avenue.

There seems to be no question as to the identity and ownership of the mules, which were identified by witnesses testifying on behalf of both claimants and respondent. There was evidence that the mules were seen earlier on the day of November 5, 1955. One of respondent's witnesses, a Mr. Wilkey, testified that the mules were loose as early as 7:30 P.M. on the evening in question, and he had notified a Mr. Pearl McCormack that the mules were not on the state hospital grounds. Mr. Wilkey called a Mr. Clyde Pryor, one of the patients from his ward, and they went to the barns where the mules were generally kept. Mr. McCormack testified that he had no knowledge of how the mules escaped, and did not know whether or not they had been used on the date in question. It further appears in the record that the gates to the pasture were closed at the time Mr. McCormack made his inspection. No one testified that the pasture fence was in a good state of repair, nor had any inspection been made of the pasture fence, since the date of the accident.

When they were unable to locate the mules, Mr. McCormack returned Mr. Pryor to his ward at approximately 9:30 P.M. on said date, and Mr. McCormack then returned to his home. Mr. McCormack testified that no one, other than he or Mr. Pryor, made any effort to locate the mules. The next Mr. McCormack knew was that he received a telephone call about 12:30 A.M. on November 6, 1955 in regard to the accident in question.

As has been earlier stated, the mules were identified as being the property of respondent. From the evidence, it appears that the pavement was dry, and visibility was good.

The statute involved is Chap. 8, Par. 1, 1955 Ill. Rev. Stats., which is as follows:

"Hereafter, it shall be unlawful for any animal of the species of horse, ass, mule, cattle, sheep, goat, swine or geese, to run at large in the State of Illinois; Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large."

A proviso was added to the statute in 1931, and, as a consequence of the enactment of Sec. 1, as it now stands without the proviso, the law of the State of Illinois requires the owner or keeper of stock named in the statute to keep them from running at large on the public highways. The owner or keeper was liable in a civil action for damages from his stock being loose on the highway, even though he did not know the stock was so at large. It was not necessary for the plaintiffs in such an action to allege that the owner or keeper negligently and unlawfully permitted his stock to be at large. (*Farrell* vs. *Crawford*, 222 Ill. App. 499.)

Under the proviso, the owner or keeper of stock may show in a civil action against him for injury caused to

a person or property, as a result of his stock running at large on the highway, that without his knowledge the stock was so at large, and that he used reasonable care to restrain the stock from being at large.

In the present case as well as in that of *Fugett* vs. *Murray,* 311 Ill. App. 323, claimants introduced evidence proving that the mules belonged to respondent; that the agents of respondent knew that the mules were at large; that they made no examination of the fences or enclosure to show that they were in a good state of repair; that they abandoned their search for the animals at 9:30 P.M. on the evening before the accident, and made no further inquiry or search as to the whereabouts of the animals after knowing they were at large; that claimants were in the exercise of due care and caution for their own safety, and that the mules running at large on the highway were the proximate cause of the accident. Claimants then rested their case.

The general rule is that, where an accident occurs as a result of the violation of the statute making it unlawful for stock to run at large on the highway, there is a presumption of negligence on the part of the owner or keeper of the stock, which is sufficient to carry the case to the jury (45 A.L.R. 507).

In the present case, as well as in the *Fugett* vs. *Murray* case, respondent claims the benefit of the proviso. We adopt the rule in the *Fugett* vs. *Murray* case that the proof to be established under the proviso was within the knowledge of respondent and claimants. The burden of proof after claimants rested their case in chief was on respondent.

This Court passes not only on questions of the law, but is a trier of the facts of the case as well, and, as such, in considering the facts and the law of the case

cannot help but find that respondent has failed to prove to our satisfaction that its fences were stock tight. We feel that respondent's agents should have continued its search for the mules knowing that they were at large, and being aware of the probability that they might wander out onto the highway endangering the traveling public. Respondent has further failed to prove, under the proviso of the act in question, that the mules were not at large through its negligence, which, coupled with the failure of the agents to make a further search for the mules and the possibility of the avoidance of this accident, we believe is sufficient to find respondent guilty of negligence.

In regard to the contributory negligence of claimants, we have taken into consideration the topography where the accident occurred, the failure of the lack of lights within the vicinity, and the speed of claimant's automobile, which was less than the posted speed in the vicinity where the accident occurred. From a finding from all these facts, it is our opinion that claimants were not guilty of contributory negligence, and that it was the negligence of respondent's agents, which was the proximate cause of the accident in question.

As to the question of damages, it was proven that the cost of the repairs to the automobile was more than the value of the car, so that the measure of damages for Clifford Hanchett would be the difference between the fair cash market value of the automobile of $350.00, and its salvage value of $25.00, or a net claim of $325.00.

As to the claim of Clifford Hanchett, Father and next friend of Dennis Hanchett, it appears that the injury in question was to the right arm of Dennis Hanchett. He testified that he had received minor cuts and

abrasions as a result of the accident, but had sustained no serious injuries other than that his chest was sore from coming into contact with the steering wheel. It appears that the Commissioner, George W. Presbrey, who heard this case, and had an opportunity of seeing and examining Dennis Hanchett's arm, reported that his arm can be moved in all directions, his only complaint being that he doesn't have strength in his right arm, and is unable to tell when he has a tight hold or grip.

The Commissioner found that on June 27, 1956, Dennis Hanchett went into the Navy. He passed the physical examination, and, after being in the service approximately six months, he received a medical discharge due to his arm. While he was in the service, and pulling on a line, he felt his right arm become extremely weak. He subsequently received treatment for his arm in a Naval Hospital. He then received a medical discharge, although the record shows he is not receiving any disability payments from the United States Government.

The Commissioner found on examination that the right middle, ring and little fingers have pronounced red splotches. The red discoloration is not on the surface of the hand, but appears to be in the hand itself, and the palm of said claimant's hand is not discolored in any way.

Dr. Lawrence Holden, a specialist in neurology, and neurosurgery, testified on behalf of claimant, Dennis Hanchett. The first time Dr. Holden saw the patient was on January 10, 1956. His findings disclosed that there was some tenderness on the forehead and on the right side, and that there was also some redness of the

fingers on the right hand. The doctor's diagnosis was causalgia. The doctor was not able to make a diagnosis with absolute certainty, because the case in question had rather unusual findings. From the doctor's testimony, it appears that causalgia is a condition of pain, usually in the extremities, following an injury to a nerve. The doctor again saw Dennis on February 20, 1956. On March 19, 1956, he made arrangements for Dennis to go to the hospital, and he was admitted on March 29, 1956.

At the hospital he received some novocain injections to the stellate ganglion in the neck. The purpose of this was to determine whether or not the patient had causalgia, and whether it could be relieved by the novocain injections. At the time he was admitted to the hospital, he still complained of pain in his right arm. Dennis indicated that he felt some relief after the novocain injections, but the doctor was not convinced of sufficient relief to warrant surgical removal of the ganglion for more permanent effects. Since Dennis' release from the hospital, the doctor has not seen him.

The doctor testified that, in his opinion, there could be a causal connection between the accident and his findings of suspect causalgia, and that the patient's present complaints could be related to the accident. The doctor was unable to testify whether or not Dennis' condition was permanent. On cross-examination, the doctor testified that the discoloration did not affect the use of the fingers. He further testified on cross-examination that he had no record of the patient complaining of any loss of sensation, although he did have a hypersensitivity of the arm, and did complain of pain.

The doctor further testified that causalgia is not too difficult to diagnose; that the patient has tenderness

to a light touch to the extremity, depending upon which one is affected, there is a marked change in color; and, the hand may look waxy, or it may look red. The doctor diagnosed Dennis Hanchett as suspect causalgia, because his symptoms were not too severe at any time, and indicated in his testimony that causalgia could be aggravated by subsequent mechanical injuries, such as the stretching of the cervical plexus.

From the record, it does not appear that Dennis has lost any earnings.

The following medical bills were submitted:

| | |
|---|---|
| Dr. Holden | $ 50.00 |
| St. Francis Hospital | 88.05 |
| Dr. Carroll | 40.00 |

It is, therefore, the award of this Court that a claim be allowed for Clifford Hanchett, individually, in the amount of $325.00.

It is, therefore, the award of this Court that a claim be allowed for Clifford Hanchett, as Father and next friend of Dennis Hanchett, in the amount of $1,000.00.