PATRICK O'GARA, Plaintiff-Appellant, *v.* DR. C. C. KANE, Defendant-Appellee.

Fifth District   No. 75-342

Opinion filed May 27, 1976.

G. Bradley Hantla, of LeChien & Hantla, Ltd., of Belleville, for appellant.

Dennis W. Shevlin, of Hillebrand, Cook & Shevlin, Ltd., of East St. Louis, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff, Patrick O'Gara, brought suit to recover for personal injuries received when an automobile in which he was a passenger collided with a horse owned by Dr. C. C. Kane, defendant, on Route 40, St. Clair County, Illinois, on November 2, 1971. At the close of all the evidence the defendant moved for and was granted a directed verdict from which plaintiff appeals.

The issue presented is whether the court erred in directing a verdict for the defendant. This is controlled, as both parties recognize in their briefs, by the rule enunciated in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504, " * * * verdicts ought to be directed * * * in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill. 2d 494, 510.

The complaint was in two counts. The first alleged negligence in allowing the horse to run at large and the second alleged a violation of

chapter 8, section 1, of the Illinois Revised Statutes which reads in pertinent part:

" * * * [I]t shall be unlawful for any * * * horse * * * to run at large in the State of Illinois: Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large."

Dr. Kane testified that nine colts were kept in a fenced pasture on his farm and that all nine escaped from the enclosure on the evening of the accident. The fence around the pasture had been renewed just a few weeks before the incident. Those repairs consisted of a new corner post, a creosoted railroad tie, other posts of 6″ by 6″ creosoted wood, all buried 3 or 4 feet deep and sticking up 5 to 5½ feet and placed 8 feet apart. The cross bars were two 2″ by 6″ boards, nailed approximately 16 inches apart.

After the accident Dr. Kane saw the fence and it was broken out at the corner where the repairs had been made. He described the colts as approximately 4 feet tall and weighing between three and four hundred pounds each. He stated that no horses had ever broken through that fence prior to the incident and none had done so afterward. He was not aware that the horses were out until he received a telephone call that one had been hit and killed on the highway. He testified that in his opinion the colts had been frightened by something and ran through the fence in a group.

Frank Williams testified that he was the farm overseer for Dr. Kane at the time of the accident. He removed the dead horse from the highway, recovered a second horse which had been injured, and rounded up seven others. His testimony concerning the construction of the fence agreed with that of Dr. Kane with the additional information that he had used spike nails on the 2″ by 6″ cross boards. He described the fence after the accident as broken out on the corner which had been repaired. An area 10 feet wide was "wrecked" and one post was "knocked out." He described the horses as 6 months old and weighing between three and four hundred pounds apiece. He surmised that it would take at least three colts running together to break through a fence of that size and offered his opinion that all of the colts charged the fence together.

The evidence adduced by the plaintiff consisted of testimony by a State Trooper as to the condition of the car, its occupants and the horse immediately following the accident, testimony by the plaintiff as to his recollection of the accident and his damages, and testimony from the owner and driver of the car as to his recollection of the accident. Rebuttal

testimony by a young man named Robert Shrodes, aged 13 at the time of the accident, was offered to the effect that he saw two horses running between the fences and the ditch and across the highway where one was hit by a car. He was asked whether he had seen any horses get out of Dr. Kane's pasture at any time before the accident. He replied "Well, they got lost—I seen them a couple of times in his own pasture but not out on the highway." The question was then asked "Well, I mean outside of the fenced area?" Robert answered "Maybe one time, yeah, one or two times maybe."

■■ Viewing this evidence in the light of the *Pedrick* rule, we believe the verdict was properly directed for the defendant. The only evidence presented which went to the allegation of negligence on the part of defendant was that of Robert Shrodes to the effect that he might have seen the defendant's horses out once or twice before the accident. However, his testimony is so unclear on this point that it cannot be relied upon standing alone as it does. Such a conclusion does not constitute an evaluation by this court of his credibility. He was, by his own admission, unsure of what he saw. Even if it were possible to deduce that he meant the defendant's horses were out and running loose at some point before the accident there is no indication if such occurred before or after the repairs to the fence or what condition caused or permitted their escape.

As to the second count alleging a statutory violation, the plaintiff argues that animals encompassed by the statute are running at large unlawfully if on the public highway unattended, unrestrained and uncontrolled, relying on the case of *Fugett v. Murray*, 311 Ill. App. 323, 35 N.E.2d 946. The language from *Fugett* upon which plaintiff relied is, however, meant to describe the rule of law established by the early cases prior to the amendment of the law in 1931. Such rule is inapplicable here. The statute was amended by the addition of the proviso that an owner would not be held liable if able to prove that he used reasonable care in restraining his animals and if he was without knowledge that they were running at large. As stated in *Fugett* the proviso was intended by the legislature to relieve the owner of livestock of the harshness of the law as established in the early cases.

The testimony of Dr. Kane was that he had no knowledge that the horses were out until notified after the accident and that testimony was uncontradicted. The only remaining element required to be established under the statute is that the defendant used reasonable care in restraining the animals from running at large. The question then becomes whether the fence described by Dr. Kane and Fred Williams constituted the use of reasonable care in restraining the horses.

The burden was on the plaintiff to prove his case by a preponderance of the evidence. That the plaintiff made a prima facie case is evident by the

fact that the motion for directed verdict by defendant at the close of the plaintiff's case was denied. Having made out a prima facie case the burden of proceeding shifted to the defendant. The burden of proof, however, remained on the plaintiff. *Guay v. Neel,* 340 Ill. App. 111, 91 N.E.2d 151.

■■ Defendant adduced proof of the construction of the fence which established that a reasonable effort had been made to restrain the colts in the absence of any proof from plaintiff as to what would have constituted a reasonably secure fence, if the one described was not. Plaintiff offered no evidence bearing on the reasonableness of the construction of the fence.

The court was correct in directing the verdict only if a contrary verdict based on the evidence presented could never stand. (*Pedrick v. Peoria & Eastern R.R. Co.*) We are of the opinion that the evidence presented, when taken in its aspect most favorable to the plaintiff, would not have supported a verdict in his favor. (*Guay v. Nell.*) The court did not err in directing a verdict for the defendant.

The judgment is affirmed.

KARNS, P. J., and EBERSPACHER, J., concur.