[No. 28965.   Department Two.   July 2, 1943.]

A. G. RUSHLIGHT & COMPANY, *Appellant,* v. GEORGE
JOHNSON *et al., Respondents and Cross-appellants.*[1]

[1]Reported in 139 P. (2d) 280.

*Caldwell, Lycette & Diamond,* for appellant.

*Ralph B. Potts,* for respondents and cross-appellants.

GRADY, J.—This action was brought by A. G. Rush-light & Company, a corporation, against George Johnson, J. O. Johnson, and Albin Johnson, copartners doing business under the firm name and style of Western Construction Company, to recover damages for breach of contract. The case was tried before the court and a jury, and a verdict for the plaintiff was returned. The court denied a motion of the defendants for judgment notwithstanding the verdict of the jury, but granted their alternative motion for a new trial on the specific ground that an error had been committed by the court in giving instruction No. 15. The plaintiff has appealed from the order granting a new trial, and the defendants have taken a cross-appeal from the order denying their motion for a judgment notwithstanding the verdict.

The basis of the complaint is that respondents had entered into a contract with the United States govern-

ment to construct a warehouse in the city of Seattle, and, on July 12, 1941, in connection with the performance of the main contract, awarded a subcontract to appellant to install all plumbing, heating, and sprinkler systems, sewer work, and temporary toilets for workmen; that, shortly after the subcontract was executed, the respondents wrongfully repudiated the subcontract and refused to permit further performance by the appellant, which caused it to suffer damages.

The answer of the respondents admitted their co-partnership status, the existence of their contract with the United States government, the entry into the subcontract with the appellant, and denied generally all of the other allegations of the complaint. The respondents then set up a "first, separate and affirmative defense," in which they plead in detail that appellant had breached its subcontract with them, in that it failed, neglected, and refused to furnish them the bond required under the subcontract or to install the temporary toilet facilities for workmen as provided for in the subcontract; and, for these reasons, they had declared the subcontract breached, forfeited, and terminated.

The reply of the appellant alleged that the bond referred to in the answer was given by it to the respondents before any attempt was made by them to terminate the subcontract; that, prior to the giving of the bond, the time had been extended by the respondents, and the bond was furnished within such time; also, that no notice had been given by the respondents to appellant at any time prior to the repudiation of the subcontract that the temporary toilet facilities were needed, or that the subcontract would be terminated if such facilities were not installed; and that the respondents had not erected a building or prepared a place in which the toilet facilities could be installed.

We have made a somewhat extended reference to the pleadings, as they have an important bearing upon

the action of the trial court in granting a new trial because of the giving of instruction No. 15, relating to the burden of proof. The factual situation which the jury had a right to adopt, and which we deem sufficient to consider the questions raised on the appeal and cross-appeal, is as follows:

The subcontract contained the following provisions:

"Section 3. The Subcontractor and the Contractor agree that the materials, labor, equipment, supplies, and tools to be furnished and work to be done by the Subcontractor are as follows:

"Having carefully examined the plans and specifications and Addenda 1, 2 and 3, as well as the premises, the Subcontractor agrees to furnish all material and labor in the installation of all plumbing, heating, sprinkler systems, sewer work and temporary toilets for workmen. All in accordance with plans and specifications and to the satisfaction of the engineer-in-charge. . . .

"Section 4. The Subcontractor agrees to complete the several portions and the whole of the work herein sublet by the time or times following: Work to commence as soon as the project is ready and to be carried on with sufficient force so as not to delay the general progress of the work. Should the said Subcontractor neglect to carry on his work with sufficient force and thereby cause delay on the project, the General Contractor reserves the right after giving forty-eight hours' written notice to take over the contract and complete the same, charging the expense thereof to the said Subcontractor; . . .

"Section 12. Unless it is expressly waived herein, the Subcontractor agrees that he will within five days from date herein provide the Contractor with a bond in a Surety Company in form and contents acceptable to the Contractor, conditioned for the faithful performance of this contract in all of its particulars."

When the parties discussed the prepared subcontract, the appellant requested that the provision for the giving of the bond be waived. The respondent with whom the matter was discussed objected to this, but he agreed that they would pay one half of the bond premium.

The appellant requested the respondent to take up the matter of the waiving of the bond with his brothers. The respondent then suggested that the question of the bond be left until the first of the week, when respondents would let appellant know if the bond would be waived. There was then appended to the subcontract the following provision, which both parties signed:

"It is hereby understood and agreed that in the event a subcontract bond is required, Western Construction Co. and A. G. Rushlight & Co. will each pay one-half the amount of premium in payment of bond, notwithstanding sec. 12 of subcontract agreement, which is hereby modified as above as to payment of premium."

This was on Saturday, July 12th. On July 15th, respondents wrote a letter to appellant, addressed to its office in Portland, Oregon, informing it that they had decided to ask that a bond be furnished in accordance with section twelve of the subcontract. On the same day, the respondents got in communication with Mr. Rushlight in Seattle by telephone and informed him that they would require the bond, and read a copy of the letter to him. The respondents also, in this telephone conversation, requested that appellant put in the temporary plumbing, explaining that their contractee was insistent on its being installed. In neither the letter nor the telephone conversation did the respondents tender or offer to pay one half of the bond premium.

On July 18th, the respondents wrote another letter to appellant, demanding that the bond be given and stating that they wanted it within the five-day period provided for in the subcontract, or even sooner, but adding that, as three days had already passed, it could not be expected sooner. In this letter they stated they were ready and willing to pay one half of the amount of the bond premium. The letter was received at the Portland office of the appellant on July 19th.

On the morning of July 22nd, the respondents again

mailed a letter to appellant, informing it that they had elected to terminate the subcontract; the reasons given for its termination were failure to give bond and failure to put in temporary plumbing. Mr. Rushlight had been in Seattle on July 21st, and he had secured a bond, but it was too late that day to deliver it to respondents. However, during the forenoon of July 22nd, the bond was delivered. Later the same day, with a letter of transmittal, respondents returned the bond to appellant.

In addition to the letters, there had been some telephone conversations between the parties. In one of these conversations, occurring about eleven o'clock in the morning on July 21st, appellant was informed that, if the bond could not be delivered on the 21st, it would be all right if delivery was made in the morning of the next day. The verbal testimony as to the bond and putting in temporary plumbing covered a wide range and in some respects was conflicting, but there is ample evidence in the record, if believed by the jury, to justify the verdict.

We shall first consider the cross-appeal. The respondents contend that the court erred in not sustaining their challenge to the sufficiency of the evidence to sustain any verdict for the reason that the appellant did not furnish a bond within five days after it had received their notice that one would be required, the notice having been received July 16th and the bond was not furnished until July 22nd.

The court instructed the jurors that the appellant was required to furnish the bond within five days from the receipt at its office of respondents' letter of July 15th, unless they found that the time for the delivery of the bond had been extended to and including July 22nd. The respondents urge that, as the only evidence of any extension of time was the testimony of Mr. Rushlight that, in a telephone conversation on July 21st with one of the respondents, the respondent extended

the time until the next day, this was insufficient to support a finding by the jury to that effect, because of the rule that evidence of verbal admissions or declarations of the adverse party, especially from an interested party, when there are no other facts or circumstances corroborating the same, is not sufficient to sustain a verdict of the jury on a vital issue.

Mr. Rushlight, when testifying as to what the respondent said about extending the time to furnish the bond, was not repeating an admission or declaration made by the respondent. An admission is a voluntary acknowledgment made by a party of the existence or truth of a certain fact. A declaration is the assertion or statement of a fact. The expressed assent of the respondent to an extension of time within which to furnish the bond for another day was neither an admission nor a declaration, and the testimony of the appellant that such an assent was given was sufficient proof thereof if believed by the jury. The trial court properly denied the motion for judgment notwithstanding the verdict.

Instruction No. 15 is as follows:

"You are instructed that it is admitted that the defendants, in writing, declared that their contract with the plaintiff was terminated, and refused to permit plaintiff to proceed with the performance of the contract after July 22, 1941. Now, in this connection, you are instructed that such action on the part of the defendants would constitute a breach of the contract by the defendants, entitling the plaintiff to recover such damages as it might have sustained, unless the defendants were justified in taking such action by reason of the default of the plaintiff, either in failing to furnish a bond within the time the same was legally required, or, in failing to install temporary plumbing if the same was required. Now in this connection I further instruct you that the burden is upon the defendants to convince you by a preponderance of the evidence that the plaintiff was actually in default in either or both of the respects above mentioned, and unless the defendants do so convince you, it will be your duty to return a

verdict in favor of the plaintiff and against the defendants."

Upon a consideration of the motion for a new trial, the trial court concluded the instruction was erroneous, no doubt being moved to do so by *Smith Sand & Gravel Co. v. Corbin,* 75 Wash. 635, 135 Pac. 472, wherein it was held that, even though an answer contains affirmative allegations, if such allegations do not in fact constitute an affirmative defense, they are, in effect, but denials of the facts pleaded in the complaint and do not cast upon the defendant the burden of proof of their truth, and that it is error so to instruct the jury. We think, however, that, in the light of the whole record, the rule of that case should not be extended to the situation presented here.

In considering his defensive matter, a defendant is often perplexed in determining whether it can be shown under general denial or whether it has such affirmative aspects that it must be pleaded. If his answer be but a general denial, when he submits his defensive matter he may be embarrassed by an objection that his evidence is not admissible. If the trial court rules against him, he must either abandon his theory of defense or move to amend his pleading. So it is not unusual, if the pleader is in doubt, to plead affirmatively the facts constituting the defense; on the other hand, if this be done, he may be confronted with the claim that he has the burden of proof of the affirmative matter, and the trial judge, if no question be raised with reference thereto during the progress of the trial, is thereby invited so to instruct the jury. In this case, the trial judge, when he observed the very complete affirmative defense pleaded, naturally assumed that the respondents considered that they had the burden of proving a justification for terminating the subcontract, and instructed the jury accordingly. We think, under the circumstances, he was justified in so doing, and that, by setting up the de-

fensive matter as an affirmative defense in their answer, the respondents invited such an instruction.

■■ When the respondents excepted to the giving of instruction No. 15 and called attention to the *Smith Sand & Gravel Co.* case, counsel for appellant indicated their willingness to have the instruction withdrawn from the jury. The counsel for the respondents did not join therein. When counsel for respondents completed noting exceptions to the instructions given, counsel for appellant moved that the instruction be taken from the jury, but this request was not joined in by counsel for respondents. If the respondents felt that the burden of proof had been unlawfully cast upon them, it was their duty to aid in the correction of any error committed and while such correction could be made. We are satisfied that, had counsel for respondents joined in the request to withdraw the instructions, the trial judge would have done so; besides this, in instruction No. 4, given by the court, the jurors were instructed:

"The burden is on the plaintiff to establish, by a fair preponderance of the evidence, the material allegations of its complaint that are denied by the defendants in their answer.

"Likewise, the burden is on the defendants to prove, by a fair preponderance of the evidence, the material allegations of their affirmative defense that are denied in the plaintiff's reply."

No exception was taken to this instruction by the respondents. Instruction No. 15 was no more than an amplification of this instruction, because the court had informed the jury of the contents of the answer and the affirmative defense set forth therein, and then told them that the burden was upon the respondents to prove the material allegations of their affirmative defense. Under these circumstances, the giving of instruction No. 15, to which an exception was taken, was unnecessary and added nothing to what had already been given.

Under all of these circumstances, we think that the error complained of was not only invited by the respondents, but was also waived, and that the court should not have granted a new trial because of having given instruction No. 15.

██ We also think, in any event, the error was harmless, for the court would have been justified in holding, as a matter of law, that the subcontract had been terminated by the respondents without legal justification. The covenant of appellant to furnish the bond and the covenant of respondents to pay one half of the premium were mutual and dependent covenants, and, before either party could put the other in default for nonperformance, it was its or their duty to tender performance and demand performance on the part of the other party. The offer to pay one half the bond premium was not communicated to the appellant until July 19th. The bond was furnished July 22nd, and thus was within the five-day limitation period.

The subcontract provided that the appellant should install temporary toilets for workmen. As we read and interpret the record, it seems conceded that the temporary work of making the necessary opening to the sewer and construction of the housing for the toilets was to be done by the respondents. The opening to the sewer was made, but the respondents had not constructed the housing for the toilets before giving the notice of termination of the subcontract. The subcontract provided that, if the appellant should neglect to carry on its work and thereby cause delay on the project, the respondents would have the right, after giving forty-eight hours' written notice, to take over the subcontract and complete the same. No such notice was given before the notice of termination of the subcontract was given. It therefore follows that the termination of the subcontract upon the two grounds relied upon by the respondents was not justified.

That part of the order of the court denying the mo-

tion for judgment notwithstanding the verdict is affirmed, that part of the order granting a new trial reversed, and the case is remanded for entry of a judgment on the verdict of the jury.

SIMPSON, C. J., BEALS, BLAKE, and ROBINSON, JJ., concur.

