**POOLE et al.**

v.

**GILLISON et al.**

No. 2614.

United States District Court
E. D. Arkansas, W. D.
Dec. 16, 1953.

provisions of Rule 56(b) and (c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which motion has been submitted upon written briefs. The record upon which the motion has been considered consists of the pleadings in the case, certain interrogatories propounded to the plaintiffs and answered on their behalf by their attorney, the pretrial deposition of Mrs. Margaret V. Poole, one of the plaintiffs, and similar depositions of all of the defendants, certain affidavits which have been filed in support of the motion, and the affidavit of plaintiffs' attorney in opposition thereto.

This is a personal injury suit brought by the plaintiffs to recover damages which they claim to have sustained as a result of an automobile accident which took place on the night of December 22, 1951, at a point on United States Highway No. 82 in Chicot County, Arkansas, when the plaintiffs' automobile struck, or was struck by, a mule alleged to have been the property of the defendants. The accident occurred when two mules which were at large undertook to run across the highway in front of plaintiffs' car; one of the mules got across the road, but the other collided with the vehicle; both of the plaintiffs were injured, and their car was damaged. The mule was killed.

Charles J. Lincoln, Little Rock, Ark., for plaintiffs.

H. B. Stubblefield, Little Rock, Ark., for defendants.

LEMLEY, District Judge.

This cause comes on for hearing upon the defendants' motion for summary judgment filed herein pursuant to the

It is the theory of the plaintiffs, and they allege that the defendants negligently permitted said mules to run at large upon the highway in violation of Special Act 136 of the Arkansas Legislature for 1921,[1] and they specifically contend that the doctrine of res ipsa loquitur is applicable in this case. The defendants, among other things deny

1. Plaintiffs did not plead the provisions of Initiated Act No. 1 adopted by the people of Arkansas at the General Election in November of 1950, which became effective on December 7 of that year, and which declares it to be "unlawful for owners of cattle, horses, mules, hogs, sheep, or goats to allow them to run at large along or on any public highway in the State of Arkansas." The view which we take of the case, however, renders this immaterial. It is necessary for the plaintiffs to rely upon some statute since the common law of Arkansas does not require the owner of livestock to keep his animals enclosed or confined. Little Rock & Ft. Smith R. Co. v. Finley, 37 Ark. 562; St. Louis, I. M. & S. R. Co. v. Newman, 94 Ark. 458, 127 S. W. 735, 28 L.R.A.,N.S., 83.

negligence and deny that the res ipsa doctrine applies; in support of their motion, they contend that the record in the case, consisting of the items above mentioned, shows that there exists no genuine issue as to any material fact, and that they are entitled to judgment as a matter of law. We agree, subject to a proviso hereinafter set forth.

While it is true that the function of the Court in passing upon a motion for summary judgment is simply to determine whether or not a genuine issue of fact exists, rather than to decide such issue if extant, yet a genuine factual issue is not raised merely by the formal allegations of the pleadings, and if the Court is satisfied that the facts in the case, as disclosed by the pleadings, affidavits, admissions, depositions and other matters considered, are such that it would be required upon a trial of the case to direct a verdict for the moving party, then no genuine issue of fact exists, and summary judgment should be granted. Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881; Hurd v. Sheffield Steel Corp., 8 Cir., 181 F.2d 269; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101; 6 Moore's Federal Practice, 2d ed., p. 2128.[2] In passing upon such a motion the Court is required to view the evidence in the light most favorable to the party opposing the motion, to indulge all reasonable inferences in favor of such party, and to deny the motion if reasonable men might differ as to the conclusions to be drawn from the evidence. Dulansky v. Iowa-Illinois Gas & Electric Co. and Ramsouer v. Midland Valley R. Co., both supra.

When the record before us is viewed in the light of the principles just mentioned, we are satisfied that, as the case now stands, there is no substantial evidence of negligence on the part of the defendants, that the res ipsa doctrine is inapplicable, and that if a trial should be had, we would be compelled to direct a verdict for the defendants.

In discussing the evidence in the case, it should first be said that if the plaintiffs are to recover herein, it must be upon the basis of negligence on the part of Mr. David Gillison, who was in charge of the defendants' farm and of the mule involved in the accident. This is true because of the language of both Act 136 of 1921 and Initiated Act No. 1 of 1950. Section 2 of Act 136 makes it unlawful for the owner or custodian of any horses, mules, or other specified livestock "to permit said animals or any of them to run at large beyond the limits of his own land, or the lands leased, occupied or controlled by him within the boundaries of Chicot County * * *, Arkansas"; and Section 6 of said Act makes it a misdemeanor for any owner of livestock to "knowingly allow or permit" the same to run at large. As pointed out, Initiated Act No. 1 of 1950 makes it unlawful for owners of specified livestock "to allow them to run at large along or on any public highway in the State of Arkansas." The language of both statutes is essentially the same as that contained in Act 405 of 1919 which made it unlawful for any owner of horses or other types of livestock " * * * to allow the same to run at large anywhere in Conway County", and which further provided that, "The owner of any stock, which is allowed to run at large in Conway County, * * * shall be liable to triple damages for any damage which may be done by such stock so running at large, * * *". The last mentioned statute was before the Supreme Court of Arkansas in Favre v. Medlock, 212 Ark. 911, 208 S.W.2d 439, a case involving a collision between an automobile and two horses in Conway County; it was contended that said statute im-

---

2. In Hurd v. Sheffield Steel Corp., supra, Judge Gardner pointed out that the question of the sufficiency of the evidence in a case is a question of law rather than of fact.

posed an absolute duty upon the owner of horses to keep them up, and that he would be guilty of negligence as a matter of law if they got out on the highway; in rejecting this contention, the Court adopted the reasoning of Briscoe v. Alfrey, 61 Ark. 196, 32 S.W. 505, 30 L.R.A. 607; Fraser v. Hawkins, 137 Ark. 214, 208 S.W. 296; and Field v. Viraldo, 141 Ark. 32, 216 S.W. 8; in all of which cases it was held that under similarly worded statutes an owner of livestock was liable for damages occasioned by his stock running at large only in case he was guilty of negligence in permitting them to be at large. As to the measure of care required of the owner, the Court quoted with approval from Briscoe v. Alfrey, supra, wherein it was said: " 'What degree of care is required? Only that which a prudent man under similar circumstances would exercise to prevent animals of the kind mentioned from running at large, taking into consideration their natural habits and propensities.' " 212 Ark. at page 913, 208 S.W.2d at page 440. The Court likewise had occasion to distinguish the case of Pool v. Clark, 207 Ark. 635, 182 S.W.2d 217, on the basis that the statute before the Court in that case made it unlawful for certain animals to "run at large", nothing being said about the acts of the owner in "allowing" or "permitting" his stock to be at large; the Court pointed out that the statute involved in Pool v. Clark was "an absolute inhibition", whereas the Conway County stock law imposed liability only in cases in which the owners of animals were guilty of negligence. In view of the wording of both Act 136 of 1921[3] and of Initiated Act 1 of 1950, we are of the opinion that Favre v. Medlock is in point here, and that negligence must be shown.

■■ It seems clear from the record before us that the mule with which the Poole car collided either belonged to the defendants or at least was in their custody and control on December 22, 1951; and it further appears that the only reasonable inference that can be drawn from the evidence is that this mule and possibly another escaped from the defendants' enclosure during that night. While counsel for the plaintiffs have suggested that this mule, or these mules, may never have been put in the enclosure and may have been "allowed" or "permitted" to run at large, there is no evidence to support such suggestion, and it would be pure speculation and conjecture for a jury to so find. Nor is there any substantial evidence, either direct or circumstantial, that the escape of this animal, or these animals, was occasioned by any act of negligence on the part of anyone; there is no evidence that the gate to the enclosure was left open, or that the fence was inadequate, or that it was weak or in ill repair, or constructed in an inferior manner or of inferior materials,[4] and there appears to be no reason to believe that the plaintiffs have or can obtain such evidence. In this connection it may be said that a mere hope on plaintiffs' part that additional evidence may develop at or prior to the trial is not a sufficient ground to deny the motion. 6 Moore, op. cit., p. 2129.

■ In the final analysis the only basis upon which this case could be sent to the jury would be a holding that the doctrine of res ipsa loquitur is applicable. In order for said doctrine to apply it must appear that the instrumentality causing the injury was under the exclusive control and management of the defendant, and that the occurrence was

3. For present purposes we are willing to assume without deciding that Special Act 136 included among its purposes the protection of traffic on highways; such was certainly the purpose of Initiated Act No. 1.

4. On the other hand, the testimony on the part of the defendants indicates that the fence around the pasture or lot was properly constructed and was in good condition.

such as in the ordinary course of events would not have happened if proper care had been used. Coca-Cola Bottling Co. of Ft. Smith v. Hicks, 215 Ark. 803, 223 S.W.2d 762; Southwestern Gas & Electric Co. v. DeShazo, 199 Ark. 1078, 138 S.W.2d 397; Ramsouer v. Midland Valley R. Co., supra. Now, a mule is not an inanimate object without any independent volition, but is a live animal possessed of a brain and an intelligence of its own; the mules in this case broke out of their enclosure in the night time of their own volition while Mr. Gillison was in bed. Under such circumstances we do not think it can be said that they were under his exclusive control and management at the time that they broke out of the lot to the extent necessary to invoke the res ipsa doctrine. Moreover, even if it be assumed that they were under his exclusive control and management while they were in the lot, it does not follow that they were so subject at the time of the collision, and, under Arkansas law, it is ordinarily required to invoke said doctrine that the exclusive control of the defendant shall have continued up to the time of the plaintiff's injury. Coca Cola Bottling Co. of Ft. Smith v. Hicks, supra, 215 Ark. 803, 808, 223 S.W.2d 762. But, entirely aside from the question of control, the escape of animals from a lot or other enclosure is not such a departure from the ordinary course of events as to raise any inference or presumption of negligence. We all know from common experience that animals quite often jump fences or break through them without there being any suggestion of negligence on the part of their owners or keepers; mules are strong animals with a reasonably high degree of intelligence and with very pronounced wills of their own, and they can display a considerable amount of sagacity and initiative in escaping from an enclosure which is not to their liking.

Counsel have not cited any authority in support of their contention that the res ipsa doctrine applies here, and we are of the opinion that it is not applicable. As a matter of fact, the decision in Favre v. Medlock, supra, is almost, if not entirely dispositive of this particular contention; in that case the evidence was that the horses involved in the accident escaped in the night time from a pasture or lot enclosed with a wire fence, and it was held that under such circumstances their presence upon the highway was not prima facie evidence of negligence.

Counsel for the plaintiffs have stated that both of the latter are now in Germany, and that counsel have not had an opportunity to confer with Mr. Poole, and that affidavits controverting the defendants' motion are not currently available. Counsel suggest that I defer ruling on the motion "until such time as the testimony of the plaintiffs would be available to the Court and parties in toto". Rule 56(f) of the Federal Rules of Civil Procedure provides that if it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." While it appears that said Rule has not been strictly complied with in that no affidavit from either Mr. or Mrs. Poole has been furnished, although there has been ample time for such to be obtained, we would not be inclined to insist upon a strict compliance with the Rule and would be willing to postpone the determination of this motion if we felt that anything would be gained thereby. But it appears that this case has been rather fully developed, and we do not know of anything that either of the plaintiffs could add to what is already before us.[5]

5. When her discovery deposition was taken, Mrs. Poole was asked if she knew

of any specific carelessness or negligence on the part of the defendants, and

While counsel may not have had any opportunity to confer personally with Mr. Poole, they have had sufficient time to correspond with him fully, and they have had ample opportunity to confer with Mrs. Poole; in this connection, it appears that her deposition was taken in June of the current year, and she was examined rather fully relative to the accident, and it is not to be presumed that she would testify otherwise than she has already deposed. Moreover, on October 16 of this year, at the request of plaintiffs' counsel, a trial setting of this case was cancelled in order to give counsel an opportunity to take the depositions of the plaintiffs in Germany since it appeared that they would not be able to attend the trial, but, as far as we know, such depositions have not yet been taken. Under the circumstances, we do not believe that a postponement of our determination of the pending motion would be justified under the showing thus far made. In order that no injustice may be done, however, counsel will be given 30 days within which to attempt to make a further showing of what, if anything, they expect to prove, either by the plaintiffs themselves, or otherwise, tending to show negligence on the part of the defendants.

Let an order be entered providing that unless within 30 days from date hereof plaintiffs attempt to make a showing of negligence on the part of the defendants by deposition, affidavit or verified answers to interrogatories filed herein, the motion for summary judgment will be sustained and the case dismissed without any further action on the part of the Court, and further providing that if

such an attempted showing is made within said period of time, the Court will give further consideration to said motion.

she replied: "Yes, the Gillisons were negligent in violating State and County stock laws which prohibit people in possession of livestock permitting them to roam at large on the public streets; as I had never seen or met any of the Gillisons until after the accident when I talked with Jack and David Gillison and had never stopped in Lake Village before I have no way of knowing personally any other possible acts of negligence on their part." Of course, the first portion of her statement does not amount to evidence, it being merely an expression of an opinion or a conclusion of law.