[No. 34601. Department Two. February 5, 1959.]

ALICE A. PRITCHETT *et al.*, *Respondents*, v. THE CITY OF
SEATTLE, *Appellant.*[1]

[1]Reported in 335 P. (2d) 31.

*A. C. Van Soelen* and *William W. Brown*, for appellant.

*Kahin, Carmody & Horswill*, for respondents.

ROSELLINI, J.—This action was brought by the plaintiff wife, hereafter referred to as the plaintiff, to recover damages for personal injuries sustained while riding as a passenger on a transit bus belonging to the defendant and operated by one of its employees. The jury returned a verdict in favor of the defendant. Thereafter the trial court gave judgment for the plaintiff and ordered a new trial on the issue of damages only. In the alternative, the order provided that in the event the foregoing order should be reversed or set aside for any reason, a new trial should be had on all the issues because of certain errors in giving and refusing instructions. It was the opinion of the trial court that the evidence showed, as a matter of law, that the defendant's employee was negligent and that this negligence was the proximate cause of the plaintiff's injuries.

Error is assigned to the rulings of the trial court embodied in this order. The jury's verdict should stand, the defendant contends, because the evidence was in conflict and the jury could properly find that the defendant's employee was free of negligence.

It is an established rule that a motion for judgment notwithstanding the verdict involves no element of discretion and will not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence sufficient to sustain the verdict. *Omeitt v. Department of Labor & Industries*, 21

Wn. (2d) 684, 152 P. (2d) 973. The evidence must be construed most strongly against the moving party. *Cooper v. Gallaher*, 50 Wn. (2d) 588, 313 P. (2d) 702.

The accident in question occurred on Third avenue in Seattle, while the bus on which the plaintiff was a passenger was moving from the bus zone at Columbia street, where passengers had been discharged, to the intersection at Cherry street, one half block away, where it came to a stop for a traffic light. According to the plaintiff's testimony, she was seated in the first seat behind the rear door and stair well. When the passengers were discharged, she signaled the operator to stop at the next loading zone and rose from her seat in order to be prepared to alight when the bus stopped. She was "hanging on to the stanchion." The bus swerved, throwing her off balance, and then came to a sudden stop, throwing her forward in the bus and causing her to fall. As a result of the fall, her back was severely injured.

The plaintiff called two former bus drivers who testified that the force of an ordinary stop would not throw a person standing and holding onto the stanchion. The plaintiff's physician testified that the type of injury which she suffered does not ordinarily occur except as the result of considerable trauma, as a sudden jackknifing forward of the body, or a sudden fall from a distance on the buttocks. There were scuff marks on the floor of the bus immediately after the accident. Such marks, a witness stated, do not appear from ordinary use of the floor.

There were only two passengers on the bus when the accident occurred. The other passenger, William J. Marquette, testified for the defendant. He stated that there was nothing out of the ordinary in the way the bus was being operated at the time. It did not swerve or stop suddenly. He first became aware of the plaintiff's predicament when he heard her feet tapping rapidly down the aisle. He did not know what could have caused the plaintiff to lose her balance and be thrown to the floor.

The driver of the bus testified that as he drove out from the bus zone into the driving lane there was no traffic be-

hind or ahead of him to affect his operation of the bus. He observed as he pulled out from the zone that the traffic light at Cherry street, which had been green, was changing to red, and prepared to stop. At this point he was aware of the plaintiff in the aisle of the bus. She had lost her balance and was coming down the aisle "at a good pace," reaching for the handrails and trying to regain her balance. According to his recollection, she fell just before the bus came to a stop at the intersection. He knew of nothing in the movement or operation of the bus which could have caused her to lose her balance.

The court instructed the jury regarding the plaintiff's theory that the operator of the bus was negligent in making a sudden, unusual and extraordinary jerk and jolt of the bus, in swerving the bus first one way and then the other, in coming to an unusual and violent stop, in traveling at an excessive rate of speed under the circumstances, and in violently applying the brakes without due regard for the safety of passengers. The jury was advised that in order to return a verdict for the plaintiff, it must find that the defendant was negligent in one or more of the respects alleged, and that a carrier of passengers for hire, while not an insurer of the safety of its passengers, owes them the highest degree of care for their safety which is consistent with the practical operation of its vehicle.

In addition to standard instructions regarding burden of proof, circumstantial evidence, proximate cause, and measure of damages, there was an instruction that a carrier is not liable for injuries resulting from jerks and jolts which are ordinarily incident to the careful operation, but only those which result from the careless and negligent operation of a bus.

The plaintiff requested an instruction pertaining to an alleged duty of an operator to watch for standing passengers. When this instruction was refused, the plaintiff's counsel stated to the court that no exception was taken to this ruling. The plaintiff did, however, except to the refusal of the court to give an instruction to the effect that the operator had a duty to anticipate that the traffic light might

change and to be prepared to stop in case of such change. The court stated that this was one of the circumstances which could be argued to the jury.

Contributory negligence was alleged, but the court refused to present this issue to the jury. In ruling on the motion for judgment notwithstanding the verdict, the court expressed astonishment that the jury had found in favor of the defendant, and stated that it felt that the evidence would not support such a verdict. It was apparently the feeling of the trial court that, because the plaintiff's testimony that she was holding onto the stanchion when she lost her balance was uncontradicted, the jury was required to believe this testimony. The court evidently failed to take into account that there was no witness who observed the plaintiff as she was standing at that time, and whether or not she was holding onto the stanchion, as she said, was a matter entirely within her own knowledge. Had there been other witnesses who did not contradict her testimony, it might be proper to say that no reasonable jury could disbelieve it. But if the jury chose to believe the testimony of the defendant's witnesses, that nothing out of the ordinary occurred, it was entitled to infer that the plaintiff was mistaken in her recollection of her position at the time, and to conclude that she was thrown off balance by the ordinary motion of the bus as it turned out of the bus zone.

It is the province of the jury to weigh the evidence, under proper instructions, and determine the facts, and to believe or disbelieve any witness whose testimony it is called upon to consider; and the finding of the jury, upon substantial, conflicting evidence properly submitted to it, is final. *Rettinger v. Bresnahan*, 42 Wn. (2d) 631, 257 P. (2d) 633.

Since the evidence was in conflict, and did not point conclusively to the negligence of the defendant as the cause of the plaintiff's injuries, the court erred in setting aside the verdict.

In support of its alternative order granting a new trial on all the issues, the court stated that error had been committed in the wording of its instructions Nos. 7 and 10

and in its refusal to give the two requested instructions referred to above. As we have pointed out, no exception was taken to the refusal of one of these instructions. Likewise, no exception was taken to instructions Nos. 7 and 10, which the court characterized as unclear and misleading. It is well settled in this jurisdiction that error in giving or refusing instructions will not support an order granting a new trial if no exception was taken at the time the ruling was made. *Trosper v. Heffner*, 51 Wn. (2d) 268, 317 P. (2d) 530; *Rushlight & Co. v. Johnson*, 18 Wn. (2d) 383, 139 P. (2d) 280; *Lamping v. Ripley*, 178 Wash. 206, 34 P. (2d) 459; *Grant v. Huschke*, 70 Wash. 174, 126 Pac. 416.

In *Lamping v. Ripley, supra*, the plaintiff excepted to an instruction on the emergency doctrine on the ground that it was inapplicable to the facts of the case, because if there were an emergency, it was created by the negligence of the defendant. The plaintiff did not request an instruction embodying the exception to the emergency doctrine, but successfully urged before the trial court, after the verdict in favor of the defendant was returned, that such an instruction should have been given. In reversing the order granting a new trial, we said:

" . . . The subject was clearly in the mind of counsel when he took his exception, and had he even then proposed a further instruction giving the exception to the general rule, the court would no doubt have given it. Jury trials are serious and expensive things, and the public, as well as the parties, are interested in having cases once fairly tried and finally disposed of. Repeated trials of the same issue are to be encouraged only when, in spite of care and diligence, error has been committed and injustice has been done. Here, though the instruction as given may have been a two-edged sword, still counsel ought not to be permitted to withhold a proper request for an additional instruction, speculate upon the jury's verdict, and then, after losing, still claim an error which would have been cured in ample time if he had acted with diligence."

The plaintiff cites the case of *Moore v. Marsh*, 59 Wash. 151, 109 Pac. 606, wherein an order granting a new trial for error in an instruction given, to which no exception was

taken, was affirmed. The court in that case recognized that, where no exception is taken to rulings on instructions, errors in that regard cannot be urged for the first time in this court, but held that such errors can be urged in the trial court on a motion for a new trial. The case has not been cited in the subsequent decisions which have all held to the contrary. These later cases are correct on principle. We see no reason why a party who has failed to call an error in instructions to the attention of the trial court before the verdict is returned and the error can be corrected, should be in a better position to urge this error before the trial court on a motion for a new trial than he is in this court on an appeal. In either case, it is too late to correct the error without the inconvenience and expense of a new trial. In so far as *Moore v. Marsh, supra,* is in conflict with the later decisions of this court, it has been overruled by the latter, which we are convinced correctly declare the law.

■ The plaintiff points out that the proposed instruction relating to a duty to watch for standing passengers is not contained in the statement of facts. Therefore, she urges, this court cannot consider whether the trial court erred in basing its order granting a new trial on what it determined to have been its error in refusing to give this instruction. Rule 34 (8), Rules on Appeal, 34A Wn. (2d) 38, provides:

"In all cases whenever any error is predicated upon a ruling relative to an instruction given or proposed, it will be necessary to include in the statement of facts all of the instructions given by the court and those proposed instructions concerning which error is assigned."

This rule would be applicable if the assignments of error required this court to examine the instruction to determine whether it was improperly refused. But, in determining whether the trial court was in error in granting a new trial, we are not called upon to examine the merits of the instruction. All of the information needed is in the record. The order refers to the instruction and gives the court's failure to submit it to the jury as a ground for the new trial. The record reveals that, when advised by the court that the instruction would not be given, counsel for

the plaintiff expressly waived any objection to it. We need look no further to determine that the failure to give the instruction, whatever its content, was not a proper basis for the granting of a new trial. The same answer applies to the plaintiff's contention that instructions 7 and 10, not being set out in the defendant's brief, cannot be reviewed.

There remains the question whether the failure to give the instruction relating to the duty to anticipate a change of the traffic light constituted prejudicial error, justifying the granting of a new trial. The plaintiff duly excepted to the court's refusal of this proposed instruction. The instruction begins with the following language:

"You are instructed that as the defendant bus driver approached the intersection with the green light in his favor, it was his duty . . . to anticipate that it might change . . ."

The instruction assumes that the evidence established the fact that the light was green as the driver approached the intersection. His testimony was that as he turned out of the bus zone into the driving lane, he observed the light begin to change. There was no direct evidence that the light was green when the bus left the loading zone. Witnesses for the plaintiff testified to the time sequence of lights at the intersection, but this evidence was never correlated to the operation of the bus. The only evidence that the bus stopped suddenly, and from which the jury could infer that the driver had failed to anticipate that the light might change, was the testimony of the plaintiff which the jury was entitled to disbelieve. Whether or not the light was green as the driver approached the intersection, was a question for the jury; and the requested instruction, which assumed that this had been established as a fact, would have amounted to a comment on the evidence and a usurpation of the jury's function. The refusal of the instruction was therefore proper.

It is also stated in the order that, in the opinion of the court, substantial justice was not done, but this statement refers to the court's previous determination that the

evidence preponderated against the jury's verdict. The order cannot be sustained on any of the grounds stated herein, and no other ground in support of it is urged.

The judgment and order are reversed and the verdict of the jury is reinstated.

WEAVER, C. J., HILL, DONWORTH, and FOSTER, JJ., concur.