[No. 37056   En Banc.   July 15, 1965.]

ESTELLE SCANLAN et al., *Appellants*, v. DONALD SMITH et al., *Respondents.**

*Clarence H. Fidler*, for appellants.

*Frank H. Roberts, Jr.* and *Richard J. Thorpe*, for respondents.

HILL, J.—The Washington Motor Vehicle Act (Laws of 1937, chapter 189, § 127, p. 913, which section does not appear in the Motor Vehicle or Highway Code, but is now codified under Animals, RCW 16.24.070[1]), makes it unlaw-

*Reported in 404 P.2d 776.

---

[1]"It shall be unlawful for any person to cause or permit any livestock to graze or stray upon any portion of the right-of-way of any public

ful for any person to cause or permit any livestock to graze or stray upon any portion of the right-of-way of any public highway within any stock restricted area.[2]

A motorist and his wife traveling at night on one of the state's primary highways, within a stock restricted area, collided with cattle on the highway. They brought this action against the owner of the cattle to recover damages for the personal injuries sustained. The case was tried to a jury. At the conclusion of all of the evidence, the trial court granted a motion to dismiss; and from the judgment of dismissal, this appeal is prosecuted.

In granting the motion to dismiss, the trial court said:

> I am at a loss to know what Smith [a defendant] should have done that he didn't do. It seems to me there is nothing that a man that had reasonable regard for the welfare of his own stock, which in the first place would be personal to him, or his duty as a decent citizen to

highway of this state, within any stock restricted area. It shall be unlawful for any person to herd or move any livestock over, along or across the right-of-way of any public highway, or portion thereof, within any stock restricted area, without having in attendance a sufficient number of persons to control the movement of such livestock and to warn or otherwise protect vehicles traveling upon such public highway from any danger by reason of such livestock being herded or moved thereon.

"In the event that any livestock is allowed to stray or graze upon the right-of-way of any public highway, or portion thereof, within any stock restricted area, unattended, the same may be impounded for safekeeping and, if the owner be not known, complaint may be instituted against such stock in a court of competent jurisdiction. Notice shall be published in one issue of a paper of general circulation published as close as possible to the location where the livestock were found, describing as nearly as possible the stock, where found, and that the same are to be sold. In the event that the owner appears and convinces the court of his right thereto, the stock may be delivered upon payment by him of all costs of court, advertising and caring for the stock. In the event no person claiming the right thereto shall appear by the close of business on the tenth day following and exclusive of the date of publication of notice, the stock may be sold at public or private sale, all costs of court, advertising and caring therefor paid from the proceeds thereof and the balance certified by the judge of the court ordering such sale, to the treasurer of the county in which located, to be credited to the county school fund."

[2] A "stock restricted area" is territory within which "it shall be unlawful to permit livestock of any kind to run at large." RCW 16.24.010.

travelers on the highway, that should have been done or could have been done, that he didn't do. Nobody has undertaken to tell this Court or the jury how that gate got opened, and I don't think speculating on possibilities would add anything to the solution of the question. In these days when vandalism seems to be one of the recreations of the younger generation anything like that could happen, but where does it come back so it could be fastened on Smith? . . . He comes back and by some method or other which no one has undertaken to explain, the cattle get out of the enclosure and some of them get on the highway. . . . I think I should have granted this motion at the time it was offered. You can say the Court was speculating and wanted to find out what the other side was putting in, and if you do say it I don't suppose I can blame you, but it wasn't that so much as I wanted to see this whole picture before resolving it. I am inclined to hold, and do hold, in this case there has been no negligence established on the part of the owner of the cattle, Smith. I don't think he permitted them to graze on the highway. He didn't leave them unattended. They weren't herded. And that is my judgment, gentlemen.

The trial court also indicated that there might well be negligence on the part of the motorist barring any recovery, but conceded that to be a question for the jury. The basis for the dismissal was that the testimony, on behalf of the defendants, was that the cattle were enclosed in a well-fenced pasture, and that in the evening, some 6 hours before the collision, those taking care of the cattle for the owners had fastened both gates to the pasture. At least one gate was found open after the collision, but the trial court suggested that the opening of the gate might have been the act of vandals.

■ Clearly, the trial court believed the witnesses who testified that they had closed the gates and, hence, concluded that there was no negligence attributable to the owners. However, it was the function of the jury to determine whether or not they believed any particular witness, and they are not obligated to believe any testimony even though there be no contradiction or impeachment of the

witness. *Day v. Frazer,* 59 Wn.2d 659, 369 P.2d 859 (1962); *Pritchett v. Seattle,* 53 Wn.2d 521, 335 P.2d 31 (1959); *Rettinger v. Bresnahan,* 42 Wn.2d 631, 257 P.2d 633 (1953); *Mc-Une v. Fuqua,* 42 Wn.2d 65, 253 P.2d 632 (1953). *Flesch v. Schlue,* 194 Iowa 1200, 191 N.W. 63 (1922) (quite close to the present case on its facts).

This case should have gone to the jury. The trial court must be reversed and a new trial granted, because the trial court usurped the function of the jury of determining whether or not the defendants were negligent.

It may be that this is all we should determine at this time, but the trial court's statement quoted above indicates a misconception of the law as to what a plaintiff must prove to establish a prima facie case under such circumstances.

The trial court indicated that the case should have been dismissed at the conclusion of the plaintiffs' evidence. The plaintiffs had proved the time and circumstances of the collision with the defendants' cattle; that it had occurred on a public highway in a stock restricted district, and the extent of the damages sustained. The trial court apparently believed that the plaintiffs were obligated to offer some further proof of negligence on the part of the defendants.

We are not concerned with any question of liability without fault. The presence of the defendants' livestock on the highway was sufficient to raise a permissible inference of negligence which would take the plaintiffs' case to the jury, and the burden was then on the defendants to go forward with any evidence that they might have in explanation of the presence of their livestock on the highway and to establish that ordinary and reasonable care had been exercised, under the circumstances, to prevent the livestock getting on the highway. Whether the evidence they offered for that purpose was sufficient to satisfy a jury, only the jury could decide.

In this holding, we are supported by the weight of au-

thority.[3] See *Anderson v. I. M. Jameson Corp.*, 7 Cal. 2d 60, 59 P.2d 962 (1936); *Kenney v. Antonetti*, 211 Cal. 336, 295 Pac. 341 (1931); (California now has a statute which says there must be no inference of negligence on the part of the owner of livestock hit on the highway.) *Porier v. Spivey*, 97 Ga. App. 209, 102 S.E.2d 706 (1958); *O'Connor v. Black*, 80 Idaho 96, 326 P.2d 376 (1958); *Shepard v. Smith*, 74 Idaho 459, 263 P.2d 985 (1953); *Fugett v. Murray*, 311 Ill. App. 323, 35 N.E.2d 946 (1941); *Guay v. Neel*, 340 Ill. App. 111, 91 N.E.2d 151 (1950); *Ritchie v. Schaefer*, 254 Iowa 1107, 120 N.W.2d 444 (1963); *Hansen v. Kemmish*, 201 Iowa 1008, 208 N.W. 277, 45 A.L.R. 498 (1926); *Ellington v. Strader*, 285 S.W.2d 497 (Ky. 1955); *Keefer v. Hartzler*, 351 S.W.2d 479 (Mo. Ct. App. 1961); *King v. Furry*, 317 S.W.2d 691 (Mo. Ct. App. 1958); *Moss v. Bonne Terre Farming & Cattle Co.*, 222 Mo. App. 808, 10 S.W.2d 338 (1928); *Doherty v. Sweetser*, 82 Hun. 556, 31 N.Y.S. 649 (1894); *Bender v. Welsh*, 344 Pa. 392, 25 A.2d 182 (1942); *Tassoni v. LeBoutillier*, 130 Pa. Super. 303, 196 Atl. 534 (1938).

---

[3]There is a minority view that the motorist must prove some negligence by the owner, in addition to the presence of his livestock upon the highway, to enable the plaintiff to get to the jury. The support for this view comes largely from those states where the courts consider that that remarkable quadruped, the mule, is possessed of more ingenuity and resourcefulness than his owner or keeper, hence there can be no inference of negligence on the part of his owner or keeper from such unattended presence on a highway. This view found eloquent expression in a federal court decision applying Arkansas law:

". . . Now, a mule is not an inanimate object without any independent volition, but is a live animal possessed of a brain and an intelligence of its own; . . . But, entirely aside from the question of control, the escape of animals from a lot or other enclosure is not such a departure from the ordinary course of events as to raise any inference or presumption of negligence. We all know from common experience that animals quite often jump fences or break through them without there being any suggestion of negligence on the part of their owners or keepers; mules are strong animals with a reasonably high degree of intelligence and with very pronounced wills of their own, and they can display a considerable amount of sagacity and initiative in escaping from an enclosure which is not to their liking." *Poole v. Gillison*, 15 F.R.D. 194, 199 (E.D. Ark. W.D. 1953).

A frequently quoted statement from *Kenney v. Antonetti, supra,* states the reasoning of the courts as to why there is a permissible inference of negligence from the presence of unattended livestock on a highway:

> Under any but exceptional circumstances, the exercise of ordinary care will serve to keep unattended animals in their proper inclosures. In these days of rapid automobile transportation, the extreme hazard to drivers and passengers of animals straying unattended on the roads at night cannot be overestimated. The driver is placed in a well-nigh helpless position because of the tendency of an animal to spring out of the darkness in front of a car when blinded or hypnotized by its headlights. Against this contingency drivers should be protected by having our roads clear of such obstructions and every owner of livestock should make an earnest endeavor to so control their movements with due care that the lives of others may not be thereby endangered. (p. 340)

What the California court said, in 1931, takes on increased significance 33 years later.

Even before the days of the automobile, it was recognized that the presence of unattended livestock on the street placed the burden of explanation on the owner and not on the injured party, it being said in *Doherty v. Sweetser, supra,*

> the fact that this horse was in the street unattended called upon the defendant to make some explanation as to how he got there. It would certainly be placing upon the plaintiff a burden which is entirely foreign to the ordinary rules of law to compel him to go into this yard from which this horse escaped, and prove what was done there in reference to its management,—facts which are peculiarly within the knowledge of the defendant, and which, if there has been no negligence, he will have no difficulty in showing. 31 N.Y.S. 649, 650.

This idea was reiterated, more than 60 years later, in *Ellington v. Strader, supra,*

> After the plaintiffs established that the accident happened and offered proof that the defendant owned the guilty cow, it seems to us that it would not be unreasonable to require the owner of the cow, who had peculiar

means of access to the facts as to how the cow got out, to make those facts known to the court. Such procedure is much more logical and sensible than to require the plaintiffs to offer proof as to how the cow escaped. 285 S. W. (2d) 497, 498.

There remains for consideration the contention of the plaintiffs that, under the terms of our Motor Vehicle Act as set forth in RCW 16.24.070, the presence of the cattle of the defendants on a public highway within a stock restricted area, constituted negligence per se; and that proof of the exercise of reasonable care by the defendants would avail them nothing.

They cite cases from three states[4] and the Province of Ontario. The latter case (*Direct Transport Co. v. Cornell*, 3 D.L.R. 456 (1938), squarely supports their contention. We have satisfied ourselves that not one of the states which has held that the presence of unattended livestock on a highway in a stock restricted area constitutes negligence per se on the part of the owner thereof, has continued to so hold.

While we believe that little importance can be attached to the claimed supporting authorities for this claim of negligence per se, some members of the court are convinced that the legislature did show an intention (by the language used in the Motor Vehicle Act[5]) to impose a strict

---

[4]Illinois, Iowa and Texas—to which we might add Georgia and Indiana.

See, however, cases cited from Illinois, Iowa and Georgia to support the "permissible inference of negligence rule" on page 605 of this opinion.

[5]As supporting the case for strict liability, attention is directed to two Acts of the 1937 legislature: Chapter 40, § 6 (part of the stock restricted area act), which provides,

"No person owning or in control of any livestock shall *willfully or negligently allow such livestock to run at large in any stock restricted area,* . . ." (Italics ours) RCW 16.24.065

Chapter 189, § 127 (part of the Washington Motor Vehicle Act), provides:

"It shall be unlawful for any person *to cause or permit any livestock to graze or stray upon any portion of the right of way of any public highway of this state, within any stock restricted area.* . . ." (Italics ours) RCW 16.24.070

In Chapter 40, the legislature puts "willfully or negligently" before

liability on owners whose unattended livestock become involved in collisions on a public highway in stock restricted areas and that, so construed, the presence of unattended livestock on the highway would constitute negligence per se by the owners thereof, and that this would be a good public policy for our present era (at least insofar as primary state highways are concerned). Strict liability would leave open the defense of Act of God (such as unusual windstorms blowing down fences), or intervening acts of third persons (such as trespassers cutting fences or opening gates).

For at least three reasons, the majority of the court disagree with this contention. First, because it is a matter of policy which is properly legislative in character;[6] second,

---

"allow"; and in Chapter 189 (obviously intended to provide for safety on the highways), it omits the words "willfully or negligently," before "cause or permit."

As further evidencing that the legislature knew what it was doing in omitting the words "willfully or negligently," we find that the legislature omitted them in the same statute in which it used them. Chapter 40, § 6 (codified as RCW 16.24.065), reads in full as follows:

"No person owning or in control of any livestock shall willfully or negligently allow such livestock to run at large in any stock restricted area, nor shall any person owning or in control of any livestock allow such livestock to wander or stray upon the right of way of any public highway lying within a stock restricted area when not in the charge of some person."

We called attention in *Bly v. McAllister* (1961), 58 Wn. (2d) 709, 715, 364 P. (2d) 500, to the fact that "willfully or negligently" did not apply to the part dealing with livestock wandering or straying *upon the right of way of any public highway lying within a stock restricted district* when not in charge of some person.

[6]Where courts have imposed strict liability, as in California and Illinois, the legislature has reversed the courts and made it clear that there was to be no liability without fault. The California enactment, in 1933, provided:

In any civil action brought by the owner, driver or occupant of a motor vehicle, or by their personal representatives or assignees, or by the owner of live stock, for damages caused by collision between any motor vehicle and any domestic animal or animals on a highway, there is no presumption or inference that such collision was due to negligence on behalf of the owner or the person in possession of such live stock. Cal. Agri. Code, § 423.

The Illinois enactment, in 1931, provided:

Provided, that no owner or keeper of such animals shall be liable

because the statutes relied upon as justifying liability without fault are criminal statutes and the offenses are no more than misdemeanors with relatively light penalties, nor does it follow therefrom that the legislature intended to drastically change the rule applicable in civil actions and permit a defendant to be liable without fault for unlimited damages; and, third, because no other state in the United States today imposes such a standard of liability on the owners of livestock, either by statute or by court decision.

In the light of the differences of opinion now existing, it would seem wise for the legislature, at its next opportunity, to further clarify the statutes, either adopting a rule of strict liability or making clear, as Illinois has done, that there is no liability without fault (see note 6).

For the reasons heretofore indicated, the judgment of dismissal is reversed and the cause remanded for a new trial.

DONWORTH, WEAVER, OTT, and HAMILTON, JJ., concur.

HALE, J.—(concurring in part; dissenting in part)—Despite scientific advances in animal husbandry, there has not yet been born a black angus steer that is temperamentally inclined to observe the motor vehicle code. I think the legislature was mindful of this limitation in animals when, in 1937—the fast car and high-speed highways having arrived on the American scene—it enacted Laws of 1937, ch. 189, § 127, p. 913 (RCW 16.24.070), with the intention, in my opinion, to rule livestock off the highways except under the most guarded of circumstances. This provision, I feel, imposes strict liability upon the owners and custodians of livestock, without regard to the owners' negligence, for injuries proximately caused by animals on the roadway. Accordingly, although in agreement with the

for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large. Smith-Hurd Ann. St. Ch. 8, § 1.

majority that the cause be remanded for a new trial, I would limit the issues to the question of damages; the facts, in my opinion, establish defendants' liability as a matter of law.

About 12:15 in the early morning darkness of October 9, 1960, on U.S. Highway 101, in a stock-restricted area between Sequim and Port Angeles, in a 60-mile-per-hour posted speed limit zone, the plaintiff, Robert Scanlan, driving his car between 35 and 40 miles per hour, encountered three black angus cattle on the highway. He applied his brakes, but unable to avoid the animals crashed into them, suffering injuries.

Defendant, owner of the black angus, had gone to Ellensburg the previous day, after earlier arranging with neighbor boys to feed the cattle once daily in their enclosure. The enclosure had two gates, the main one secured by a wooden slide and the other gate by a wire loop. One of the boys, after feeding the cattle about 5:30 the night before the accident, left the enclosure by the main gate. Defendant owner had no explanation of the means or method by which the cattle escaped their enclosure.

My opinion that the legislature intended to impose strict liability on the owners of livestock on the highways in stock-restricted areas stems largely from a consideration of the two pertinent statutes dealing with livestock on the public's right of way. The first, Laws of 1937, ch. 40, § 6, p. 106 (RCW 16.24.065), is a herd law; it has to do with the protection of livestock, crops and real and personal property by regulating grazing areas. It separates, by administrative means, farm areas in which no livestock may run at large from other farm areas in which the same animals may lawfully be at large. That all administrative powers granted by the act vest in the county commissioners, without mention of cities or towns or their officers, marks this as farm legislation designed primarily to affect agriculture with merely incidental effect on traffic control. In part, it makes negligence and willfulness standards of conduct in fixing responsibility for farm animals.

Section 6 of the herd law (RCW 16.24.065) reads:

No person owning or in control of any livestock shall *willfully* or *negligently* allow such livestock to run at large in any stock restricted area, nor shall any person owning or in control of any livestock allow such livestock to wander or stray upon the right of way of any public highway lying within a stock restricted area when not in the charge of some person. (Italics mine.)

In giving effect to all of the words employed in this statute, I conclude that the words *willfully* and *negligently* fix the standards of care as to livestock running at large generally in a stock-restricted area, but impose liability in particular on the owners without reference to negligence for livestock on the public highways in a stock-restricted area unless the animals are in the charge of some person. So, if wandering livestock cause damage in a stock-restricted area other than on a public right of way, the party seeking redress must prove, under this section, that the owner *willfully* or *negligently* permitted the animals to be at large. *Bly v. McAllister*, 58 Wn.2d 709, 364 P.2d 500 (1961). But if injury were caused by animals upon a public right of way, an action for damages would lie under this section upon simple proof that there was no person in charge even though the owner was without negligence or willfulness in allowing the animals upon the right of way. In this fashion, quite logically, I think, the legislature imposed different standards of supervision between stock-restricted areas where there are no public highways and those stock-restricted areas where straying livestock might gain access to a highway right of way.

The most persuasive grounds for strict liability, however, are found not in the herd law (RCW 16.24.065) just discussed, but in that solitary section of the motor vehicle code, Laws of 1937, ch. 189, § 127, p. 913 (RCW 16.24.070), dealing with animals upon the highways. Of that chapter's 159 sections, this alone deals particularly with dangers from livestock grazing or straying upon any portion of the right of way, thus marking it as a statute designed for highway safety primarily and fostering agriculture

only incidentally. This statute, designedly I think, omits *negligence* and *willfulness* from the tests for liability, and categorically makes it unlawful to allow livestock upon the public right of way except under specific circumstances calling for a high degree of supervision. RCW 16.24.070 reads:

> It shall be unlawful for any person to cause or permit any livestock to graze or stray upon any portion of the right-of-way of any public highway of this state, within any stock restricted area. It shall be unlawful for any person to herd or move any livestock over, along or across the right-of-way of any public highway, or portion thereof, within any stock restricted area, without having in attendance a sufficient number of persons to control the movement of such livestock and to warn or otherwise protect vehicles traveling upon such public highway from any danger by reason of such livestock being herded or moved thereon.

In ascertaining the legislative intent from the actual words employed, it should be observed that the legislature did more than eliminate *willfulness* and *negligence* from the standards of care required of one who either lets his livestock stray or graze upon the right of way or moves his stock along or upon it in a stock-restricted area. It categorically declared it unlawful to let one's livestock upon the right of way in the first instance and makes it equally unlawful to herd or move farm animals along or across the right of way unless the animals be under safe escort and control.

Accordingly, I would conclude that, when the legislature adopted RCW 16.24.070 as a part of a comprehensive highway safety code, a statute having merely an incidental relationship to farming, it omitted the words *negligently* and *willfully* from this section designedly and bespoke an intent to make it negligence per se to cause or permit livestock to graze or stray upon the public highway in any stock-restricted area. Assuming arguendo the words to have been inadvertently left out, we ought not read them back in. *McKay v. Department of Labor & Indus.*, 180 Wash. 191, 39 P.2d 997, 98 A.L.R. 990 (1934).

Therefore, under this section of the statute (RCW 16.24-.070), the wrong is complete and liability attaches without regard to negligence, willfulness or a sense of indifference when (1) a person allows his livestock to graze or stray upon the right of way in a stock-restricted area, or, expressed conversely, fails to keep them from so grazing or straying, or (2) in moving them along or across the right of way, within any stock-restricted area, he fails to provide a sufficient number of persons (a) to control the animals' movements and (b) to warn or otherwise protect traveling vehicles.

Thus, when plaintiff, traveling between 35 and 40 miles per hour, as he described the accident, crashed into three black angus steers, "coming at a gallop across the road," on a black night, the mere presence of steers upon the highway without a sufficient number of persons in charge to control their movements obviated the need to prove either willfulness or negligence.

The legislature cannot help but have known even in 1937 that, when a motorist, while moving at lawful speeds upon a modern highway in the dark of night, comes suddenly upon a large animal, an accident usually occurs. It knew, too, that by the time a motorist and his passengers get out of the hospital and return to the scene of the accident, the unlatched gate through which the animal wandered—perhaps miles away—is sure to be latched. In my view, the legislature meant to hold the owners and persons in control of livestock to strict liability where injuries are caused by farm animals upon public highways in stock-restricted areas.

It seems to me that the majority has overemphasized the herd law (RCW 16.24.065) to the disparagement of the motor vehicle code (RCW 16.24.070). I see little to relitigate in this case except damages.

Rosellini, C. J., Finley and Hunter, JJ., concur with Hale, J.