[No. 38902.   Department Two.   April 27, 1967.]

CONSOLIDATED DAIRY PRODUCTS, Co., *Appellant*, v. ROBERT
MCDONALD *et al.*, *Respondents.**

*Keesling & Lambert*, by *James J. Keesling*, for appellant.

*Paul D. Hansen* (of *Anderson & Hunter*), for respondents.

LANGENBACH, J.†—Early in the morning of May 7, 1964,
appellant's 50-55 foot long double-rig milk transport truck
was traveling down a highway in Snohomish County.
Lights on the truck illuminated the road to a distance of
100 feet on high beam and 30-40 feet on low beam. The
driver entered a long, sweeping curve at about 50 miles per
hour, the posted speed limit. As he entered this curve he
saw respondents' stud horse in the middle of his side of the

*Reported in 426 P.2d 978.

†Judge Langenbach is serving as a judge pro tempore of the Supreme
Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

road, about 40-50 feet ahead. He applied full brakes and pulled his truck to avoid the horse. The rig jack-knifed and went into the ditch causing damage to the truck. The driver testified he knew that if he drove downhill at 50 miles per hour, met an emergency and had to put on brakes, the rig might jack-knife. For this reason he was braking lightly on entering this curve.

The respondents had purchased their 2-year-old male horse a week or two before the accident. They had tethered it in a yard adjacent to the highway, first with a chain around its neck and later with a Johnson halter. There was no fence between respondents' property and the highway. On the night in question, the horse somehow got loose and walked onto the road in front of appellant's rig.

Appellant sued for the considerable damages sustained by its truck. It alleged that under the herd law and stud horse statutes, respondents were strictly liable; that this precluded the defense of contributory negligence and left only the issue of damages to be litigated. The respondents contended that the issues were their negligence and appellant's contributory negligence. The trial court submitted instructions based upon the possible negligence of each party. The jury returned a verdict for respondents and this appeal followed.

■ One of appellant's claimed errors is that the trial court gave an inordinate number of instructions relating to respondents' theory of the case. Those instructions were supported by the evidence. *DeKoning v. Williams*, 47 Wn.2d 139, 286 P.2d 694 (1955). Their number does not constitute on the facts here an abuse of the trial court's discretion to determine how many instructions should be given regarding each litigant's theory of the case. *Reynolds v. Phare*, 58 Wn.2d 904, 365 P.2d 328 (1961).

Appellant's main argument was that the respondent horse owners should be held strictly liable for the damage done to the jack-knifing truck. It assigned error to the trial court's refusal to give three proposed instructions, each of which began "The laws of the State of Washington provide."

Proposed instruction No. 2 set out the following words of RCW 16.24.070:

". . . It shall be unlawful for any person to cause or permit any livestock to graze or stray upon any portion of the right of way of any public highway in this state, within any stock restricted area . . ."

■ RCW 16.24.070 was the subject of our discussion in *Scanlan v. Smith*, 66 Wn.2d 601, 404 P.2d 776 (1965), where we said, at 604: "We are not concerned with any question of liability without fault." It was in almost the precise language of the *Scanlan* decision that the trial court in the instant case instructed:

The presence of defendant's horse on the highway was sufficient to raise a permissible inference of negligence, and the burden is then upon the defendants to go forward with any evidence that they might have in explanation of the presence of their horse on the highway and to establish that ordinary and reasonable care had been exercised under the circumstances to prevent the livestock getting on the highway.

Even though there is a permissible inference of negligence from the presence of the horse on the highway, yet under the law if you find from the evidence that defendants in fact used ordinary and reasonable care, under the circumstances, to prevent the horse from getting on the highway, your verdict must be for the defendants. Instruction No. 2.

Appellant's other proposed instructions were taken from RCW 16.16, "Stallions and Jacks at Large." Proposed instruction No. 3 set out language from RCW 16.16.010 which provides a criminal penalty for an owner permitting a stallion to run at large. Proposed instruction No. 4 set out language from RCW 16.16.040 which makes the owner liable for any damage done to person or property by any stud horse running at large. With these statutes, as with RCW 16.24.070, we are not concerned with any question of liability without fault. The presence of livestock on the highway raises a permissible inference of negligence which will take the plaintiff's case to the jury and places on the defendants the burden of going forward with any evidence which shows

that they exercised reasonable and ordinary care to prevent the livestock from getting onto the highway. Such presence does not impose upon the owner liability without fault.

There was credible evidence before the jury to establish that the horse showed no mean or uncontrollable tendencies or viciousness, that the use of a Johnson halter was a reasonable method of tethering such a horse and that up to the time of the accident the horse had not been used for breeding purposes.

There was also credible evidence bearing upon various acts of negligence in the operation and control of the truck at and prior to the time of the accident. It was for the jury to decide whether, under these facts and circumstances, there was negligence or contributory negligence in the actions of the parties. That issue was resolved by the jury in the respondents' favor.

The judgment is affirmed.

FINLEY, C. J., HUNTER and HAMILTON, JJ., concur.